851 F.2d 257
 ALLSTATE INSURANCE COMPANY, Plaintiff-Appellee,
v.
Cecil A. PACHECO, individually, and as guardian ad litem of
Raquel Pacheco, a minor; Laverne Pacheco,
individually, Defendants-Appellants,
and
Moises M.T. Fabia, Sr., also known as Moses M.T. Fabia, Sr.,
individually, and Ninfa C. Fabia, individually and
as guardian ad litem of Moises M.T.
Fabia, Jr., a minor, Defendants.
 No. 87-2437.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted April 7, 1988.
Decided July 1, 1988.
 
 Roy J. Bell, III, Weinberg & Bell, Honolulu, Hawaii, for defendants-appellants.
 William C. McCorriston, Honolulu, Hawaii, for plaintiff-appellee.
 John D. Yamane, Honolulu, Hawaii, for defendants Fabia.
 Appeal from the United States District Court for the District of Hawaii.
 Before WALLACE, REINHARDT and NOONAN, Circuit Judges.
 NOONAN, Circuit Judge:
 
 
 1
 Allstate Insurance Company (Allstate), an Illinois corporation, brings an action for declaratory relief to obtain the court's construction of an insurance policy. The defendants are Moises M.T. Fabia, Sr. and Ninfa C. Fabia, insureds under the policy; their minor son, Moises; Raquel Pacheco, a minor, who was injured by Moises Jr.; and her parents, Cecil A. and Laverne Pacheco. All are residents of the state of Hawaii. Diversity jurisdiction exists. The district court granted summary judgment to Allstate. The Pachecos appeal.
 
 
 2
 The injury to Raquel Pacheco occurred in June 1985 when Moises Jr., then 13, was collecting money from his newspaper route customers. Moises was driving a 1985 Suzuki moped which struck Raquel and ran over her right leg. The moped was a 49 cc machine propelled by a motor without pedal-assisted means of propulsion. The question we are asked to decide is whether as a matter of law the moped was excluded from coverage by the policy. There is no doubt that appellants, third party beneficiaries of the policy, have standing.
 
 
 3
 The policy is entitled "Allstate Deluxe Homeowners Policy." The policy begins with two pages of definitions. The policy proceeds to set out the property covered. There is an elaborate definition of "earth movement" and "water damage," both of which are excluded from coverage. The policy proceeds for another twenty pages until it reaches "Section II--Family Liability and Guest Medical Protection." A subhead repeats the words "Family Liability Provision." The section begins by declaring, "Allstate will pay all sums arising from an accidental loss which an insured person becomes legally obligated to pay as damages because of bodily injury or property damage covered by this part of the policy."
 
 
 4
 The section goes on to list exclusions from coverage--injuries intentionally caused by an insured; bodily injury to an insured; injury to one covered by workman's compensation provided by the insured; injuries caused by aircraft; and injuries caused by watercraft away from the insured's premises. Between the exclusion of injuries from aircraft and watercraft is one for injury "arising out of the ownership, maintenance, use, occupancy, renting, loaning, entrusting, loading or unloading of any motorized land vehicle or trailer." It is on this provision that Allstate relies in maintaining that the Fabias' moped was excluded from coverage.
 
 
 5
 On the face of the policy, Allstate argues, it has plainly not undertaken to provide liability insurance for any injury caused by an automobile. A moped propelled by a motor is as much a "motorized land vehicle" as a Lincoln Continental. The exclusion is not made ambiguous, Allstate adds, by additional clauses stating that the exclusion does not apply to a golf cart, to a motorized wheel chair, or to a vehicle used to service the insured's premises and not designed for use on public roads and not subject to motor vehicle registration. Indeed, Allstate argues, these instances of what is not excluded put the insured on notice that anything that moves on land with a motor is excluded unless the contrary is explicitly specified. The district court accepted this line of reasoning and held that "a common sense definition of motorized land vehicle includes a moped and a reasonable lay person would expect the same."
 
 
 6
 The difficulty with this reading of the policy begins with the fact that "motorized" does not mean what Allstate thought it meant. According to the dictionary, the term has four meanings:
 
 
 7
 a: to equip with motor-driven vehicles in substitution for those otherwise propelled < a fire department>< a farm> b: to equip (as groundfighting troops) with motor-driven vehicles for transportation--distinguished from mechanize c: to equip with automobiles < the police> d: to design or adapt (as a machine or a tool) for direct operation esp. by an electric motor < a lathe>. Webster's Third New International Dictionary (1981)
 
 
 8
 Plainly, definitions b and c have no application here. Definition a, if used here, would exclude only vehicles where a motor has been substituted for some other original form of power. Automobiles would not be excluded. Definition d looks a bit more favorable to Allstate. If taken to be the meaning of "motorized" here, this definition would exclude a vehicle where adaptation of the vehicle had led to installation of a motor. The definition would exclude a moped where a motor had been added to a vehicle moved by foot. Definition d does not, however, in terms exclude either an automobile or a moped that has issued from the factory with a motor as its source of power.
 
 
 9
 But, Allstate may respond, automobiles are obviously excluded. The answer is, Not clearly by the policy. There is a doubt which in the case of an automobile is resolved by looking outside the policy to the statutory requirements for automobile insurance. See H.R.S. Chapter 294 (Motor Vehicle Accident Reparation). It is only in terms of that statutory scheme that it makes sense to hold that Allstate's Deluxe Homeowners Policy does exclude automobiles from coverage.
 
 
 10
 The case is otherwise with mopeds. When one turns to the statutory scheme, one finds that there is no requirement that an owner insure mopeds as motor vehicles unless he is leasing them. See H.R.S. Sec. 291C-207. One cannot say with confidence that it would make no sense for a Homeowners Policy to cover them. Indeed, the contrary is true. In today's world every property owner is aware that any moving object he owns may cause damage and subject him to liability. If he is not compelled to insure his moped as a motor vehicle, he would naturally expect to have it covered by a policy covering "Family Liability."
 
 
 11
 Each side has not implausible arguments. In doubt we look at the Hawaiian statutes to see if the doubt can be resolved. The Hawaiian Traffic Code, H.R.S. Sec. 291C-1, provides that a moped is a vehicle subject to regulation. The Traffic Code also includes bicycles as vehicles. On the other hand, the Hawaiian Safety Act, H.R.S. Sec. 286-2, regulates "motor vehicles" but expressly declares that the term "motor vehicle" does not include "mopeds." The Taxation Code is similar, H.R.S. 249-1. We are left with our doubt. Hornbook law, good in Hawaii as elsewhere, requires that an ambiguity be construed against the insurer that issued the policy. Okada v. MGIC Indemnity Corp., 795 F.2d 1450 (9th Cir.1986). In doubt as to the meaning of "motorized land vehicles" in relation to mopeds, we hold that a moped is not excluded by Allstate's Deluxe Homeowners Policy.
 
 
 12
 It is objected that with diligence an ambiguity may be found in almost any insurance policy. That observation is too sweeping. Mere disagreement between the parties does not create ambiguity. Sturla, Inc. v. Fireman's Fund Ins. Co., 67 Hawaii 203, 209, 684 P.2d 960 (1984). Reasonable expectations of the applicants and beneficiaries control. Id. at 210, 684 P.2d 960. But insurance law has been developed by the course of life and human inventions revealing a difference between these reasonable expectations and what the draftsmen of insurance policies may have had in mind. The drafters get it right from their point of view the next time. The detailed definition of "earth movement" and "water damage" show what can be done.
 
 
 13
 Allstate was already on notice from a case that was in litigation in another jurisdiction well before the date of this accident that mopeds might fall within the policy. Lane v. Allstate Insurance Co., 472 So.2d 823 (Ct.App.Fla.1985). It could not reasonably have believed Hawaiian law to be less ambiguous than Florida's. As an insurer operating throughout the country, Allstate is in an excellent position to be aware of what parts of its policy will cause ordinary readers difficulty. For the same reason, that the plaintiff is active nationally, we direct publication of this opinion. Even though only Hawaiian law is being decided, the uncertainty attached to "motorized land vehicle" is of interest to policyholders in other jurisdictions.
 
 
 14
 REVERSED AND REMANDED with directions to enter judgment for the appellants.
 
 WALLACE, Circuit Judge, dissenting:
 
 15
 I do not agree with the majority's conclusion that the term "motorized land vehicle" in the Allstate Deluxe Homeowners Policy is ambiguous. We should start with the obvious: we do not have before us a vehicle casualty insurance policy but a homeowners policy. Under the most natural reading of the policy's plain language, I believe that the moped at issue in this case is unquestionably a "motorized land vehicle." A moped is clearly a "vehicle" within a layman's understanding. No one disputes that a moped is designed exclusively for use on "land." As a completely self-propelled, motor-driven vehicle, the moped involved in this case is obviously "motorized." Hence, I would be astonished if a reasonably intelligent insured would believe that the moped here was something other than a "motorized land vehicle."
 
 
 16
 Because the moped involved in this case is a "motorized land vehicle," it falls within the exclusion from liability coverage set forth in section II, paragraph 5 of the policy. This provision states that:
 
 
 17
 We do not cover bodily injury or property damage arising out of the ownership, maintenance, use, occupancy, renting, loaning, entrusting, loading or unloading of any motorized land vehicle or trailer.
 
 
 18
 After announcing this wholesale exclusion of liability coverage for bodily injury or property damage relating to the use of any motorized land vehicle, paragraph 5 then immediately thereafter excepts from this exclusion six specific kinds of land vehicles:
 
 
 19
 a) a motorized land vehicle in dead storage or used exclusively on an insured premises;
 
 
 20
 b) any motorized land vehicle designed principally for recreational use off public roads, unless that vehicle is owned by an insured person and is being used away from an insured premises;
 
 
 21
 c) a motorized wheel chair;
 
 
 22
 d) a vehicle used to service an insured premises which is not designed for use on public roads and not subject to motor vehicle registration;
 
 
 23
 e) a golf cart owned by an insured person when used for golfing purposes;
 
 
 24
 f) a trailer of the boat, camp, home or utility type unless it is being towed or carried by a motorized land vehicle;
 
 
 25
 By this provision's clear and unambiguous terms, any particular "motorized land vehicle" that is not brought back within the policy's ambit through explicit enumeration remains within the general exclusion from coverage that applies to a "motorized land vehicle." Even the most strained interpretation of the English language cannot shoehorn the moped involved in this case into one of the six categories of motorized land vehicles specifically removed from the otherwise all-encompassing exclusion of section 2, paragraph 5. The moped thus remains excluded from the policy's coverage.
 
 
 26
 Nor do I see anything in the Hawaii statutory scheme governing motor vehicles that tends to cast doubt on the interpretation of "motorized land vehicles" within the meaning of the policy. The majority makes much of the introductory "General" provisions section of the policy, which declares that "[w]hen the policy provisions are in conflict with the statutes of the state in which the residence premises is located, the provisions are amended to conform to such statutes." Because the Hawaii Highway Safety Code and Hawaii Taxation Code both declare that a "moped" is not a "motor vehicle" within the meaning of those statutes, see Haw.Rev.Stat. Secs. 286-2, 249-1 (1985), the majority suggests that this fact creates an ambiguity in the meaning of "motorized land vehicle" in the Allstate policy.
 
 
 27
 The majority's reasoning escapes me. Among the six specified categories of "motorized land vehicles" that are removed from paragraph 5's general exclusion and brought back within the policy's coverage are motorized wheelchairs and golf carts. "Motorized wheelchairs" and "golf carts" are not among the long list of land-roving vehicles that are considered a "motor vehicle" within the meaning of the Hawaii Highway Safety and Taxation Codes. The fact that these same motorized wheelchairs and golf carts are considered "motorized land vehicles" within the policy's four corners should inform any reasonably intelligent insured that "motorized land vehicles" as defined in the Allstate policy is a much broader category than "motor vehicles" within the meaning of the Hawaii Highway Safety and Taxation Codes. Unlike the Hawaii statutes, which define "motor vehicle" to include only a narrow subset of all motor-driven vehicles, the Allstate policy in this case, by including such divergent devices as motorized wheelchairs and golf carts within the reach of "motorized land vehicle," has in no uncertain terms alerted the policyholder that "motorized land vehicles" encompasses all motor-driven land vehicles. Regardless of what the Hawaii statutes say about the definition of motor vehicles for purposes of vehicle registration and taxation, the fact remains that, even in light of state law, "motorized land vehicles" within the meaning of the policy before us is to be read in its most natural, literal sense.
 
 
 28
 Because I believe that the plain and unambiguous language of the Allstate policy excludes coverage for the moped involved in this case, and because nothing in the laws of Hawaii injects any doubt into the otherwise clear import of the policy's provisions, I must respectfully dissent. To the extent that courts in other jurisdictions may look to the majority opinion in construing the same Allstate policy, they should be reminded that the majority's finding of ambiguity in the term "motorized land vehicle" was impelled at least in part by its reading of the idiosyncrasies of Hawaii law.