Amy N. VARDA,
Plaintiff-Respondent-Cross-Appellant,

OSF HEALTHPLANS, Involuntary-Plaintiff,

v.

ACUITY, A Mutual Insurance Company,
Defendant-Third-Party
Plaintiff-Cross-Respondent,

Brent ROBERTS, Jennifer L. Stoeger and
ABC Insurance Company,
Defendants-Cross-Respondents,

ELLINGTON MUTUAL INSURANCE COMPANY,
Defendant-Appellant,†

v.

Luane QUELLA and Christopher Quella,
Third-Party Defendants-Cross-Respondents.

Court of Appeals

*No. 2004AP2853. Submitted on briefs May 2, 2005.
—Decided June 1, 2005.*

2005 WI App 167

(Also reported in 702 N.W.2d 65.)

† Petition to review denied 8-25-05.

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Arnold P. Anderson* of *Mohr & Anderson, LLC*, of Madison.

On behalf of the defendant-third-party plaintiff-cross-respondent, Acuity, a Mutual Insurance Company, the cause was submitted on the brief of *Vincent R. Biskupic* of *Hinshaw & Culbertson, LLP* of Appleton.

On behalf of the plaintiff-respondent-cross-appellant, Amy N. Varda, the cause was submitted on the combined brief of *James P. Pitz* of *Sigman, Janssen, Stack, Sewall & Pitz* of Appleton.

Before Cane, C.J., Hoover, P.J., and Peterson, J.

¶ 1. CANE, C.J. Ellington Mutual Insurance Company appeals a nonfinal order[1] denying its motion for summary judgment in this personal injury case. Ellington argues that its homeowner's policy with Henry Stezenski does not provide coverage for an accident that occurred while Christopher Quella was mowing the lawn of Stezenski's rental property because Quella was not performing "domestic duties" for its insured at the time.

¶ 2. Amy Varda, who was injured in the accident, cross-appeals the judgment and order granting Acuity's motion for summary judgment. Varda argues that the trial court erred when it concluded the Quellas' policy with Acuity unambiguously denied liability for injuries arising out of the use of a motorized land conveyance. Varda contends that the phrase "motorized land conveyances" is ambiguous and should be construed against Acuity and in favor of coverage. If we conclude the exclusion is unambiguous, Varda argues alternatively that (1) an exception to the exclusion for vehicles designed for off-road recreational use applies to riding lawn mowers and (2) that the mower's cutting deck was an independent concurrent cause of the accident and her injuries.

¶ 3. We conclude that Quella was an insured for the purposes of Ellington's policy with Stezenski and

---

[1] We granted Ellington's petition for leave to appeal that nonfinal order on November 8, 2004.

that the Acuity exclusion for motorized land convey-
ances unambiguously applies to riding mowers. We
agree with the trial court that the recreational use
exception to the exclusion does not apply and that the
cutting deck was not an independent concurrent cause
of Varda's injuries. The judgment and orders are there-
fore affirmed.

## FACTS

¶ 4. The material facts in this case are simple and
undisputed.[2] Stezenski owned two houses in Appleton.
He lived in one and rented the other, on South Lawe
Street, to Brent Roberts and Jennifer Stoeger. On
August 31, 2002, Christopher Quella, who was fifteen at
the time, was cutting the lawn of the Lawe Street house
for Roberts and Stoeger. Quella was using a riding
mower. Varda was also outside at the time, walking
through a neighbor's yard adjacent to the yard being
mowed. A rock thrown up by the mower hit Varda in the
eye, injuring her.

¶ 5. Varda sued Quella; his mother, Luane; the
Quellas' insurer, Acuity; Stezenski; Stezenski's insurer,
Ellington Mutual; and Roberts and Stroeger. In re-
sponse to Varda's suit, Ellington and Acuity filed mo-
tions for summary judgment on coverage issues. The
trial court granted Acuity's motion and denied
Ellington's. Ellington now appeals the nonfinal order
and Varda cross-appeals the summary judgment for
Acuity.

---

[2] When, as here, both parties move by cross-motion for
summary judgment, it is "the equivalent of a stipulation of facts
permitting the trial court to decide the case on legal issues."
*Millen v. Thomas*, 201 Wis. 2d 675, 682–83, 550 N.W.2d 134 (Ct.
App. 1996).

## DISCUSSION

### *Standards of Review*

¶ 6. We review summary judgments de novo, using the same standards and methodology as the trial court. *See Green Spring Farms v. Kersten*, 136 Wis. 2d 304, 315, 401 N.W.2d 816 (1987). Summary judgment is appropriate if the material facts are undisputed or if no reasonable alternative inference can be drawn from undisputed facts, and the moving party is entitled to judgment as a matter of law. *See* Wis. Stat. § 802.08(2).

¶ 7. The interpretation of an insurance contract is also a question of law this court reviews de novo, applying the same rules of construction we apply to contracts generally. *Wisconsin Label Corp. v. Northbrook Prop. & Cas. Ins. Co.*, 2000 WI 26, ¶¶ 23–24, 233 Wis. 2d 314, 607 N.W.2d 276. When we construe an insurance policy, we look first to the language of the agreement. *Stubbe v. Guidant Mut. Ins. Co.*, 2002 WI App 203, ¶ 8, 257 Wis. 2d 401, 651 N.W.2d 318. If that language is clear on its face, we simply apply the policy terms. *See Wisconsin Label Corp.*, 233 Wis. 2d 314, ¶ 24.

¶ 8. If the policy language is reasonably susceptible of more than one construction, it is ambiguous. *See Sprangers v. Greatway Ins. Co.*, 182 Wis. 2d 521, 536–37, 514 N.W.2d 1 (1994). We resolve ambiguities in an insurance policy against the insurer and in favor of the insured. *See Garriguenc v. Love*, 67 Wis. 2d 130, 135, 226 N.W.2d 414 (1975). Whether ambiguities exist is, however, a question of law. *See Western Cas. & Surety Co. v. Budrus*, 112 Wis. 2d 348, 351, 332 N.W.2d 837 (Ct. App. 1983).

¶ 9. To determine whether coverage exists under a particular policy, we examine the facts of the insured's claim to ascertain whether the insuring agreement makes an initial grant of coverage. *American Fam. Mut. Ins. Co. v. American Girl, Inc.*, 2004 WI 2, ¶ 23, 268 Wis. 2d 16, 673 N.W.2d 65. If an initial grant is triggered, we then look to see if any exclusions apply; exclusions are narrowly or strictly construed against the insurer and any ambiguities are resolved in favor of coverage. *Smith v. Atlantic Mut. Ins. Co.*, 155 Wis. 2d 808, 811, 456 N.W.2d 597 (1990).

*Domestic Duties Related to the Insured Premises*

¶ 10. Ellington argues that the trial court erred when it concluded that Quella was an insured under the terms of its policy with Stezenski because he was performing "domestic duties" that related to "the insured premises." It claims that maintaining the Lawe Street property's lawn was Roberts's job as tenant and that the phrase "domestic duties" refers only to actions undertaken for the care, comfort, and convenience of the Stezenski family.[3] Any other result would, Ellington contends, produce the absurd result of providing more coverage for tenants and their agents than for the policyholder. Based on the policy's plain language, we disagree.

¶ 11. We first note that Stezenski purchased insurance from Ellington covering the rental property. The liability portion of that policy promises to pay "all sums for which an insured is liable by law because of

---

[3] Ellington offers this definition of "domestic duties" without citation to authority or analysis.

559

bodily injury or property damage caused by an occurrence." There is no question in this case that Varda suffered bodily injury or that her injury was caused by an occurrence under the terms of the policy. The only question, as Ellington recognizes, is whether Quella qualifies as an insured.

¶ 12. We agree with the trial court that he does. Under 8f, Section II, "Definitions," of the Ellington policy, the definition of an insured includes "persons in the course of performing domestic duties that relate to the insured premises." The policy defines insured premises as both the family dwelling shown on the declarations page and all other premises shown on that page. The declarations page of Stezenski's policy lists two addresses in Appleton as insured premises: one is the family's residential address; the other is the Lawe Street rental property. Finally, the policy states that liability and medical coverage is extended to "cover the additional family dwelling(s) described in the declarations." Despite Ellington's arguments, therefore, the policy's plain language requires no connection between domestic duties and the Stezenski family or its convenience. The policy simply requires that the duty be related to the insured premises and, in this case, the insured premises include the Lawe Street house where the accident occurred.

¶ 13. Ellington's claim that a reasonable person in Stezenski's position would understand domestic duties as being owed to people, not to real estate, is beside the point. Ellington never denies that mowing lawns is a domestic duty.[4] Thus, even if Ellington is correct and people ordinarily associate that duty with individuals

---

[4] The standard dictionary definition of domestic, "relating to the household or the family . . . connected with the supply,

rather than premises, the unambiguous language of the policy expresses something different and must govern. *See, e.g., Kremers-Urban Co. v. American Employers Ins. Co.*, 119 Wis. 2d 722, 736, 351 N.W.2d 156 (1984).

## Riding Lawn Mowers and Motorized Land Conveyances

¶ 14. On cross-appeal, Varda argues the trial court erred when it determined that the Quellas' Acuity policy provided no coverage for her injuries because Acuity exclusion for motor vehicles and motorized land conveyances unambiguously applied to the riding mower in this case.[5] She claims the phrase "motorized land conveyance" is ambiguous and should therefore be construed as a reasonable person would expect it to be construed. Varda concludes that, in the absence of any definition within the policy, an ordinary person in her position would not expect to have to buy separate lawn mower insurance to protect her family.[6] She argues alternatively that a riding mower is not a conveyance and that the exclusion therefore does not apply. We are not persuaded.

¶ 15. In determining whether that exclusion applies to a riding lawn mower, we begin, as did the trial

---

service, and activities of the household," is certainly broad enough to include mowing lawns. WEBSTER'S THIRD NEW INT'L DICTIONARY 671 (unabr. 1991)

[5] The pertinent exclusion reads "[t]he ownership, maintenance, use, loading or unloading of motor vehicles or all other motorized land conveyances, including trailers, owned or operated by or rented or loaned to an insured."

[6] As persuasive authority for the proposition that the phrase is ambiguous, Varda cites a case from Hawaii, *Allstate Ins. Co. v. Pacheco*, 851 F.2d 257, 259–60 (9th Cir. 1988).

court, with the common or ordinary meaning of the policy's words. A "motor vehicle" is defined as "an automotive vehicle not operated on rails; *esp* : one with rubber tires for use on highways." WEBSTER'S THIRD NEW INT'L DICTIONARY 1476 (unabr. 1991). To "motorize" means to equip with a "motor," which is defined in turn as "a source of mechanical power . . . [a] gasoline engine . . . [a] rotating machine that transforms electrical energy into mechanical energy . . . ." *Id.* at 1475–76. A "conveyance" is a "means of carrying or transporting something." *Id.* at 499.

¶ 16. A riding lawn mower is not, in the ordinary meaning of the words, an automotive vehicle nor is it designed for use on highways or public roads.[7] Thus, the question here is whether a riding mower is a motorized land conveyance. When we compare the definitions of motor vehicle and motorized land conveyances, it is clear the two terms are related but not identical. Motor vehicles are a subset of a larger class of things with motors that perform the functions of carrying and transporting on land. Because the riding lawn mower in this case had a motor, moved on land, and carried or transported its rider, it fits into the larger category of motorized land conveyances.

---

 [7] The statutory definition of "motor vehicle" supports this limited construction.

> Motor vehicle means a self-propelled land motor vehicle designed for travel on public roads and subject to motor vehicle registration under ch. 341. It includes trailers and semitrailers designed for use with such vehicles.

WIS. STAT. § 632.32(2)(a).

 All references to the Wisconsin Statutes are to the 2003–04 version unless otherwise noted.

¶ 17. However, Varda contends that a riding mower does not fit the definition in an important way. While a riding mower can carry a person, she points out, its primary purpose is not for transportation but for servicing a yard. She cites our opinion in *Mooren* as authority for the proposition that where the policy language gives rise to two logical arguments about the meaning of terms, ambiguity must exist. *Mooren v. Economy Fire & Cas. Co.*, 230 Wis. 2d 624, 629, 601 N.W.2d 853 (Ct. App. 1999). We are not persuaded.

¶ 18. In *Mooren*, we considered whether the term "recreational land motor vehicle" was ambiguous in the context of snowmobiles. We concluded it was because we determined that the policy language could be read either as limiting the class of vehicles to those with tires or as including vehicles, such as snowmobiles, which operated on crawler treads. *Id.* at 631–32. The meaning thus depended on whether motor vehicle was treated as a compound word or as two words with separate definitions. We see no similar linguistic ambiguity in the phrase motorized land conveyances. A riding mower works on land, has a motor, and carries or transports its operator. The fact that it performs more than a single function does not mean it ceases to be a "conveyance."[8] Indeed, as most users would agree, a significant purpose of a riding mower is to convey the person mowing the lawn.

¶ 19. While no Wisconsin case law discusses whether a riding mower is a motorized land conveyance for the purposes of a liability policy, Acuity points to several cases in other jurisdictions that have reached

---

[8] Similarly a Porsche would not cease to be a "conveyance" merely because its owner drove it not for transportation, but for recreation.

similar conclusions.[9] We find the Iowa Supreme Court's logic particularly persuasive. *Gracey v. Heritage Mut. Ins. Co.*, 518 N.W.2d 372, 374 (Iowa 1994). In *Gracey*, a young boy injured a friend while he was using his uncle's riding mower to cut his grandparents' lawn. *Id.* at 373. Interpreting language almost identical to that in the Acuity policy here, the court concluded that the exclusion for "motorized land conveyances" applied unambiguously to riding lawn mowers. *Id.* at 374. As further support for its conclusion, the court noted that if the accident had occurred at the insured location, where coverage would have been expected, an exception for vehicles used to service the insured's property would have operated to provide coverage. *Id.*

¶ 20. Like the policy in *Gracey*, the Quellas' Acuity policy includes an exception to the exclusion for motorized land conveyances for vehicles "not subject to motor vehicle registration ... [u]sed to service an insured's residence." The Acuity policy would thus also have provided coverage if Quella had been mowing his own lawn when an accident happened. But there would be no need for an exception that restored coverage for riding lawn mowers that service the insured's residence

---

[9] Both an Illinois appeals court and the Iowa Supreme Court have concluded that a riding lawn mower is a motorized land vehicle under a homeowner's policy. *See Allstate Ins. Co. v. Eggermont*, 535 N.E.2d 1047, 1050 (Ill. App. Ct. 1989); *see also Gracey v. Heritage Mut. Ins. Co.*, 518 N.W.2d 372, 373–74 (Iowa 1994). Varda cites *Pacheco* as evidence that another jurisdiction has found the phrase "motorized land vehicle" ambiguous in a liability policy. That case involved a moped, however; more importantly, the ambiguity in the policy arose from Hawaii's requirement that insurance provisions be harmonized with relevant statutes. *Id.* at 259. Because state laws sometimes classify mopeds as motor vehicles and sometimes do not, the Ninth Circuit determined that the policy language was ambiguous. *Id.*

unless the motorized land conveyance exclusion applied to the larger class of riding mowers.

*Riding Mowers and Vehicles*
*Designed for Recreational Use*

■

¶ 21. Varda argues alternatively that, if the exclusion is unambiguous, it does not apply because of the exception for vehicles "*designed* for recreational use off public roads, not subject to motor vehicle registration and not owned by the insured." (Emphasis added). We agree with Varda that a riding mower is designed for use off-road and is not subject to motor vehicle registration. We do not agree that it is designed, in the ordinary meaning of the words, for "recreational use." Rather a riding mower is designed to perform the task of mowing.

¶ 22. According to the relevant dictionary definitions, the noun "recreate" means "to renew or enliven . . . to refresh after wearying toil," and "recreation" is "a means of getting diversion or entertainment." WEBSTER'S, *supra* at 1899. We recognize that individuals can find pleasure in many activities, including cutting grass. But that does not mean that all activities from which we derive pleasure involve objects "designed for recreational use." To extend the meaning of this exception so far would, in the trial court's words, "defy common sense as well as ordinary understanding and usage." We thus reject Varda's argument.

*The Independent Concurrent Cause Rule*

■

¶ 23. Varda argues lastly that her injury was caused not by the operation of the riding mower, but by the operation of the mower's cutting deck. Therefore,

she contends, the cutting deck was an independent concurrent cause of the accident. Acuity responds that the cutting deck could not have caused the injury without being a component part of the riding mower. We agree with Acuity.

¶ 24. When an insurance policy expressly insures against loss caused by one risk, but excludes loss caused by another risk, coverage is extended to a loss caused by the insured risk even though the excluded risk is a contributory cause. *Lawver v. Boling*, 71 Wis. 2d 408, 422, 238 N.W.2d 514 (1976). An independent concurrent cause must provide the basis for a claim in and of itself, and must not require the occurrence of the excluded risk to make it actionable. *Smith v. State Farm Fire & Cas. Co.*, 192 Wis. 2d 322, 332, 531 N.W.2d 376 (Ct. App. 1995). In *Smith,* the plaintiffs contended that the exclusion for accidents occurring off the insured location did not apply to a deadly snowmobile crash because the snowmobile drivers' intoxication and the failure to put a helmet on a young passenger were independent concurrent causes. *Id.* at 331–32. We rejected that argument, concluding that "[w]ithout the operation of the snowmobile off an insured location, the injury would not have occurred, intoxication and lack of a helmet notwithstanding." *Id.* at 332.

¶ 25. The same principle holds true here. Without the operation of the excluded risk, the riding mower, the cutting deck could not have caused the stone to fly up and injure Varda. Varda points out that the mower can be in motion while the cutting deck is not engaged and that the deck can be engaged without the mower being in motion. But neither of these facts alters the reality that, in this case, the cutting deck could not have

turned a stone into a dangerous projectile unless it was part of the riding mower, an excluded risk.

*By the Court.*—Judgment and orders affirmed.