David J. MARNHOLTZ and Diane L. Marnholtz,
Plaintiffs-Appellants,

v.

CHURCH MUTUAL INSURANCE COMPANY,
Defendant-Third-Party Plaintiff-Respondent,†

THRIVENT FINANCIAL FOR LUTHERANS as
Administered by Blue Cross Blue Shield
of Minnesota, Defendant,

v.

David LEACH, Third-Party Defendant.

Court of Appeals

*No. 2011AP150. Submitted on briefs August 9, 2011.*
*—Decided April 26, 2012.*

2012 WI App 53

(Also reported in 815 N.W.2d 708.)

† Petition for Review Filed.

480

On behalf of the plaintiffs-appellants, the cause was submitted on the briefs of *George Burnett* of *Liebmann, Conway, Olejniczak & Jerry, S.C.*, Green Bay.

On behalf of the defendant-third party plaintiff-respondent, the cause was submitted on the brief of *Christian A. Preus* of *Meagher & Geer, P.L.L.P.*, Minneapolis, MN.

Before Vergeront, Sherman and Blanchard, JJ.

¶ 1. SHERMAN, J. David Marnholtz (Marnholtz) and his wife, Diane Marnholtz, appeal an order of the circuit court dismissing on summary judgment their suit against Church Mutual Insurance Company to recover damages for personal injuries sustained by Marnholtz. At issue in this case is whether David Leach, who resided on property where Marnholtz sustained injuries as a result of a fall, was an insured under a homeowner's insurance policy issued by Church Mutual Insurance on that property. The circuit court concluded that Leach was not and therefore dismissed the Marnholtzs' claims against Church Mutual. We disagree and therefore reverse.

## BACKGROUND

¶ 2. On July 26, 2008, Marnholtz sustained injuries when he fell from a scaffold erected by Leach while helping Leach install siding on Leach's full-time residence. The residence, which is described as a hunting shack, is located on approximately 160 acres of land and

481

was owned at the time by Paul Bathke and the widow of Ronald Knop. Leach, a friend of Bathke, had lived rent-free in the hunting shack for at least three years prior to the accident and on the property for approximately ten years. In exchange for living there rent-free, Leach provided caretaking services, which included guarding and maintaining the property and hunting shack. Without compensation from Bathke or Knop, Leach also made improvements to the hunting shack which included making structural additions to it, building a new roof, building cupboards for the interior, and installing flooring, windows, and exterior siding.

¶ 3. On the day Marnholtz was injured, Leach had erected a makeshift scaffold of two six-foot ladders which supported two horizontal six-foot boards to utilize while installing exterior siding to the building. Marnholtz alleged that Leach failed to secure the boards to the ladders and that when he climbed onto the scaffold, the unsecured boards gave way, causing him to fall and sustain injuries.

¶ 4. At the time of Marnholtz's injury, Bathke and Knop were covered by a homeowners insurance policy issued by Church Mutual, which provided personal liability coverage to Bathke and Knop, as well as other individuals who constituted an "insured" under the policy. "Insured" was defined by the policy as including "persons in the course of performing domestic duties that relate to the 'insured premises.' " The parties do not dispute that the shack was an "insured premises," and that if Leach was performing "domestic duties," he was an insured under the policy's personal liability coverage.

¶ 5. The Marnholtzs brought suit against Church Mutual to recover for his injuries, claiming negligence by Leach and coverage by Church Mutual under the

482

policy.[1] The parties disputed whether, at the time Marnholtz was injured, Leach was performing "domestic duties" and thus an insured under the Church Mutual policy. The Marnholtzs and Church Mutual filed crossmotions for summary judgment on the issue of whether the policy covered the Marnholtzs' injuries. The circuit court granted Church Mutual's motion. The court concluded that Leach was not performing "domestic duties" when Marnholtz was injured and was therefore not an insured under the policy. The Marnholtzs appeal.

## DISCUSSION

### A. Standard of Review

¶ 6. We review the grant or denial of summary judgment independently of the circuit court. *Novell v. Migliaccio*, 2008 WI 44, ¶ 23, 309 Wis. 2d 132, 749 N.W.2d 544. Summary judgment is appropriate where there are no disputed material issues of fact and the moving party is entitled to judgment as a matter of law. WIS. STAT. § 802.08(2) (2009–10).

### B. Coverage Under the Policy

¶ 7. The Marnholtzs contend that summary judgment in favor of Church Mutual was not appropriate in this case because Leach was performing "domestic duties" when Marnholtz was injured and was therefore an insured under Church Mutual policy personal liability coverage at the time.

¶ 8. When determining whether coverage is provided under the terms of an insurance policy, our first step is to " 'examine the facts of the insured's claim to

---

[1] Church Mutual in turn brought a third-party action against Leach.

determine whether the policy's insuring agreement makes an initial grant of coverage.' " *Olson v. Farrar*, 2010 WI App 165, ¶ 12, 330 Wis. 2d 611, 794 N.W.2d 245 (citation omitted). The Church Mutual policy provided an initial grant of liability coverage for all "insured" persons. Included in the policy's definition of insured for purposes of its liability coverage were "persons in the course of performing domestic duties that relate to the 'insured premises.' " The sole issue here is whether Leach was "performing domestic duties" when Marnholtz was injured.

¶ 9. The Marnholtzs contend that installing siding to the exterior of the building was a "domestic dut[y]" and, therefore, Leach was an insured under the policy when Marnholtz was injured. Church Mutual responds that the installation of exterior siding to the building was construction work, not a "domestic dut[y]," and therefore Leach was not an insured under the policy.

¶ 10. The interpretation of the language in an insurance policy presents a question of law, which this court reviews independently. *Varda v. Acuity*, 2005 WI App 167, ¶ 7, 284 Wis. 2d 552, 702 N.W.2d 65. We apply the same general rules we use in construing all contracts. *Id.* We first look to the language of the agreement. *Id.* If the language is unambiguous, we apply the policy terms as they stand. *Id.* However, if the word or phrase is reasonably susceptible to more than one interpretation, it is ambiguous and we will resolve ambiguities against the insurer and in favor of the insured seeking coverage. *Id.*, ¶ 8. Underlying all of this is the understanding that "interpretation of language in an insurance policy should advance the

484

insured's reasonable expectations of coverage." *Taylor v. Greatway Ins. Co.*, 2001 WI 93, ¶ 10, 245 Wis. 2d 134, 628 N.W.2d 916.

■

¶ 11. The policy does not define "domestic duties." In interpreting this phrase, we give it its plain and ordinary meaning. *See Danbeck v. American Family Mut. Ins. Co.*, 2001 WI 91, ¶ 10, 245 Wis. 2d 186, 629 N.W.2d 150. To determine the ordinary meaning, we may consult recognized English language dictionaries for guidance. *Weimer v. Country Mut. Ins. Co.*, 216 Wis. 2d 705, 722–23, 575 N.W.2d 466 (1998).

■ ■

¶ 12. WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 671 (1993) defines "domestic" as "relating to the household or the family: concerned with or employed in the management of a household or private place of residence" or as "connected with the supply, service, and activities of households and private residences." The plain and ordinary meaning of "domestic duties" is thus those duties pertaining to a household or private place of residence. However, this meaning does not satisfy us that all reasonable insureds would have the same understanding of those duties.

¶ 13. A reasonable insured could understand domestic duties to have a limited purpose, including only those duties relating to the day-to-day upkeep of a household or residence. Such duties might include: cooking, cleaning, laundry, or even mowing the lawn. *See, e.g., Varda*, 284 Wis. 2d 552, ¶ 13.[2] However, a

---

[2] In *Varda v. Acuity*, 2005 WI App 167, 284 Wis. 2d 552, 702 N.W.2d 65, the plaintiff was injured in an accident that occurred while Christopher Quella was mowing the lawn of Henry Stezenski's rental property on behalf of the property's tenants.

reasonable insured could also understand those duties to be broader in nature, including activities relating to the maintenance or repair of a residence. For example: replacing a broken pain of glass, repainting the exterior of a residence, and repairing and/or replacing a residence's exterior surface.

¶ 14. Church Mutual asserts that Leach's installation of siding on the shack does not fall within even the broadest interpretation of "domestic duties" because the installation of siding in this case was construction work, which it distinguishes from domestic work. While the term "construction" has multiple meanings depending on the context, one standard definition is "the act of putting parts together to form a complete integrated object . . . something built or erected." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 489. Church Mutual offers no authority for the proposition that construction work and domestic duties are mutually exclusive, or, for that matter, that the application of siding is the formation of "a complete integrated object."

¶ 15. On its face, the term "domestic duties" is quite broad. Following our task of giving the phrase its ordinary meaning, because it is a non-technical term not defined in the policy, it is clear that many more

The plaintiff sought to recover for her injuries under an insurance policy held by Stezenski on the basis that Quella was an insured under the policy because he was performing " 'domestic duties' that related to 'the insured premises.' " *Id.*, ¶ 10. Whether mowing the lawn constituted a "domestic duty" was not an issue in dispute in *Varda*. Rather, the issue was whether the "domestic duties" must have been associated with Stezenski's family members, or whether they could be related to the insured premises. *See id.*, ¶ 13. We observed, however, that "[t]he standard dictionary definition of domestic . . . is certainly broad enough to include mowing lawns." *Id.*, ¶ 13 n.4.

things than cooking and cleaning are "concerned with . . . the management of a . . . private place of residence." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 671. Routine maintenance of the residence, including both interior and exterior painting, is a logical activity to include in such a definition. Repairing broken glass in the windows would also seem to be included. At some point there must of course be a limit, but nothing in the policy language would lead a reasonable insured to know where that limit might lie. Whether putting siding on the exterior of the house would be included or beyond the policy definition is impossible to discern.

¶ 16. The evidence is undisputed that the hunting shack was built and added on to a number of years prior to Marnholtz's injuries, and had been lived in on either a part-time or full-time basis for years. The installation of siding was not part of the structure's actual erection, but rather an improvement to the existing structure. Had the installation of the siding been a part of the original construction of the building or its additions, an argument could be made that it preceded the occupancy of the building and was therefore not related to domestic duties. However, it was not. It was a later action that could just as easily be regarded as maintenance, like the repair of broken glass.

¶ 17. Therefore, while the narrow definition of domestic duties favored by Church Mutual is reasonable, so is the broader definition that could include routine maintenance like repairing broken window glass and, perhaps, repair or installation of new siding. Because the term "domestic duties" is susceptible to

■

more than one reasonable interpretation, the phrase is ambiguous and therefore we must construe it in favor of coverage.

■

¶ 18. Giving the term "domestic duties" a construction which favors coverage in this case, we conclude that the installation of siding as an improvement to the residence was a "domestic dut[y]" under the terms of the Church Mutual policy. Accordingly, we reverse the circuit court's order for summary judgment in favor of Church Mutual.

## CONCLUSION

¶ 19. For the reasons discussed above, we reverse.

*By the Court.*—Order reversed.