PER CURIAM.
¶1 Calumet Equity Mutual Insurance Company appeals orders of the Washington County Circuit Court granting summary judgment, awarding attorney fees to West Bend Mutual Insurance Company, and awarding attorney fees to David Schaefer. West Bend and David Schaefer contend that David is afforded coverage for claims against David in a previous lawsuit pursuant to a liability insurance policy issued by Calumet to Raymond Schaefer, David's father.[1] Calumet contends that the circuit court erred in concluding that David is an insured under Raymond's Calumet policy because David's pertinent conduct was that of a "person[ ] in the course of performing domestic duties that relate to the 'insured premises.' " Applying controlling case law, we agree with Calumet and reverse with directions to the circuit court to enter summary judgment in favor of Calumet.[2]
BACKGROUND
¶2 The following undisputed material facts are gleaned from the record. This lawsuit arises out of a previous lawsuit that concerned injuries sustained by Adam Deitsch because David's cattle were in a roadway. For context, we recite germane facts regarding the Deitsch lawsuit.
¶3 David raised cattle as part of his own business and kept the cattle he owned at Raymond's farm. Raymond had no ownership interest in the cattle.
¶4 A vehicle stopped on a roadway because David's cattle escaped from Raymond's property and were blocking the roadway. Deitsch stopped his vehicle behind that first vehicle. A third vehicle rear-ended Deitsch's vehicle, causing Deitsch to suffer injuries.
¶5 Deitsch sued David asserting that David's negligent failure to control his cattle caused his injuries. At the time of the accident, Raymond was a named insured under the liability policy issued by Calumet. The Calumet policy provided liability coverage to persons defined as "insureds" for their activities at Raymond's residence and his farm. David sought coverage under the Calumet policy, claiming that he is an insured. Calumet denied David's request for coverage and did not defend or indemnify David in the Deitsch lawsuit.
¶6 In the Deitsch lawsuit, Deitsch also made an underinsured motorist claim against his insurer, West Bend, and West Bend filed a crossclaim for indemnification against David. West Bend ultimately settled the underinsured motorist claim and paid Deitsch $ 225,000, which included $ 114,000 for which West Bend and David agreed David was legally responsible. David consented to judgment against him in favor of West Bend in the amount of $ 114,000. West Bend executed a covenant not to sue David on that judgment in exchange for an assignment of any rights that David has against Calumet pursuant to Raymond's policy with Calumet.
¶7 West Bend filed the present suit against Calumet, seeking to recover the $ 114,000 portion of the settlement of the Deitsch lawsuit for which David was responsible. Both West Bend and David also seek from Calumet attorney fees incurred in this and the Deitsch lawsuit.
¶8 The Calumet policy issued to Raymond included the following pertinent language defining who is an "insured" under the policy:
"Insured" means:
....
f. persons in the course of performing domestic duties that relate to the "insured premises."
The parties filed competing motions for summary judgment concerning the application of that policy language to the undisputed facts in this case. The circuit court denied Calumet's motion and granted West Bend's motion. These rulings were based on the court's conclusion that David is an insured under Raymond's Calumet policy because David's activities on Raymond's property, specifically involving his failure to adequately fence his cattle, constitute "domestic duties that relate to the 'insured premises.' " The circuit court entered an order for judgment in favor of West Bend regarding the $ 114,000 amount that West Bend paid for David in the settlement with Deitsch, plus interest and attorney fees. The circuit court also entered an order awarding attorney fees to David.
¶9 Calumet appeals. We refer to other material facts in the following discussion.
DISCUSSION
¶10 The parties concur that this appeal turns on whether David is an "insured" under the Calumet policy. West Bend[3] contends that David is an "insured" because David was, at the pertinent time and in the language of the policy, "in the course of performing domestic duties that relate to the 'insured premises.' " More specifically, West Bend argues that David's failure to keep his cattle properly fenced on Raymond's farm - which in turn led to the auto accident and the judgment against David in the underlying lawsuit - is a domestic duty related to the premises. Applying controlling case law, we conclude that David is not an insured under the Calumet policy because fencing of cattle on a farm is not a "domestic duty." Accordingly, we reverse and direct the circuit court to enter summary judgment in favor of Calumet.
I. Standard of Review, Summary Judgment, and Interpretation of Insurance Contracts.
¶11 We review a circuit court's decision to grant summary judgment de novo, using the same standards and methodology as the circuit court. Varda v. Acuity , 2005 WI App 167, ¶6, 284 Wis. 2d 552, 702 N.W.2d 65 ; WIS. STAT . § 802.08 (2015-16).[4] Summary judgment must be granted when there is no genuine issue of material fact and a party is entitled to judgment as a matter of law. Sec. 802.08(2). In this case, because there are no disputed material facts, we must determine which party is entitled to judgment as a matter of law. Id. ; Varda , 284 Wis. 2d 552, ¶6.
¶12 An insurance policy is a contract between the insurer and the insured. Estate of Sustache v. American Family Mut. Ins. Co. , 2008 WI 87, ¶19, 311 Wis. 2d 548, 751 N.W.2d 845. The interpretation of an insurance policy is a question of law that we review de novo, applying the same rules of construction as we do to other contracts. Varda , 284 Wis. 2d 552, ¶7 ; Marnholtz v. Church Mut. Ins. Co. , 2012 WI App 53, ¶10, 341 Wis. 2d 478, 815 N.W.2d 708. The interpretation of an insurance policy begins with the language of the agreement. Varda , 284 Wis. 2d 552, ¶7. This court construes the policy language as it "would be understood by a reasonable person in the position of the insured." Estate of Sustache , 311 Wis. 2d 548, ¶19 (quoting American Family Mut. Ins. Co. v. American Girl, Inc. , 2004 WI 2, ¶23, 268 Wis. 2d 16, 673 N.W.2d 65 ). On the other hand, this court does not construe the policy language to provide coverage for a risk "that the insurer did not contemplate or underwrite and for which it has not received a premium." Id.
¶13 The first step in determining whether coverage is provided pursuant to the terms of an insurance policy is to examine the facts of the "insured's claim to determine whether the policy's insuring agreement makes an initial grant of coverage." Marnholtz , 341 Wis. 2d 478, ¶8. The parties agree that this step is dispositive and is governed by whether David is an "insured" as defined in the Calumet policy.
II. Marnholtz and "Domestic Duties."
¶14 The Calumet policy does not define the phrase "domestic duties." However, this court has previously interpreted an insurance policy that contained applicable language identical to the Calumet policy and defined an "insured" to include "persons in the course of performing domestic duties that relate to the 'insured premises.' " Id. There, the plaintiff was injured when he fell from a scaffold while helping a homeowner install siding on a hunting shack. Id. , ¶2. It was undisputed that the shack was lived in either part-time or full-time. Id. , ¶16. The question before this court was whether the installation of siding on the shack is a "domestic duty." Id. , ¶8.
¶15 We concluded that installation of siding is a "domestic duty." Id. , ¶18. Our analysis relied on the following dictionary definitions of "domestic": "relating to the household or the family: concerned with or employed in the management of a household or private place of residence" or "connected with the supply, service, and activities of households and private residences." Id. , ¶12 (quoting Domestic , WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY (1993)). Based on these definitions, we concluded that the plain meaning of "domestic duties" is "those duties pertaining to a household or private place of residence ." Id. (emphasis added). We stated that a reasonable insured would "understand domestic duties to have a limited purpose, including only those duties relating to the day-to-day upkeep of a household or residence." Id. , ¶13. Although we acknowledged that the term "domestic duties" is "quite broad" on its face, we held that the activity must be "concerned with ... the management of a ... private place of residence." Id. , ¶15.
¶16 We now apply that controlling precedent to the undisputed facts.
III. Activities Related to a Cattle Business and the Maintenance of a Fence to Keep Cattle Enclosed Are Not "Domestic Duties."
¶17 The parties dispute whether David's activities on Raymond's property constitute "domestic duties," and they frame the issue in starkly different terms. Calumet argues that David conducting a cattle business on Raymond's farm is not a "domestic duty." West Bend argues that the facts that David was the caretaker of the farm and was responsible for maintaining appropriate fencing to keep the cattle enclosed render his failure to properly fence in the cattle a "domestic duty."
¶18 We conclude that, regardless of the perspective adopted, David's activities on Raymond's property are not "domestic duties" under the holding in Marnholtz for the inescapable reason that David's activities are not concerned with the management of a private place of residence. There is no connection between either the operation of a cattle business, or the maintenance of a fence on the premises to corral the cattle, and the management of a household or residence as required by Marnholtz .[5]
¶19 West Bend makes several arguments that David - whether as the proprietor of a cattle business or as the caretaker of the farm responsible for mending fences - was engaged in activities constituting "domestic duties." We consider, and reject, each argument.
¶20 First, West Bend quotes selectively from Marnholtz in an attempt to argue that the farm on Raymond's property is a "household" and, therefore, any activities performed in relation to the upkeep of the farm are "domestic duties." West Bend offers no support for this claim, and our opinion in Marnholtz leaves no room for this argument. To repeat, although we acknowledged that the phrase "domestic duties" is "quite broad," we also emphasized that the activity must be "concerned with ... the management of a ... private place of residence." Marnholtz , 341 Wis. 2d 478, ¶15. We did not hold that the term "domestic duties" encompasses any activity performed anywhere on an insured premises. West Bend's attempt to stretch the meaning of "household" to include any point on the farm, and its fencing, cannot be reconciled with our holding in Marnholtz .
¶21 Second, West Bend relies on another opinion from this court that construed the phrase "domestic duties" in the context of insurance coverage. See Varda , 284 Wis. 2d 552. However, West Bend misconstrues Varda . In Varda , a boy was mowing a lawn at a rental property on behalf of the property's tenants. Id. , ¶4. The lawnmower threw a rock that struck and harmed the plaintiff. Id. The question was whether the boy mowing the lawn was an insured under the rental property owner's policy. Id. , ¶10. We concluded that he was and relied on the fact that the insurer that issued the policy in question did not dispute that mowing a lawn was a "domestic duty." Id. , ¶¶12-13. In fact, we later observed in Marnholtz that the question of whether mowing a lawn was a "domestic duty" was not in dispute in Varda . Marnholtz , 341 Wis. 2d 478, ¶13 n.2. Thus, Varda does not provide a rule of law defining what activities constitute a "domestic duty," which is the central dispute in this appeal. Varda did not hold that any activity occurring on an insured premises is a domestic activity, regardless of its proximity or connection to the household or residence. For these reasons, West Bend's attempt to rely on Varda to transform the farm and its fencing into a household or place of residence must fail.
¶22 Next, West Bend asserts that "there is nothing in either the policy or common sense" to support the argument that farming cannot constitute a "domestic duty" just because it does not necessarily relate to the upkeep of the residence itself. Similarly, West Bend argues that farming work and "domestic duties" need not be mutually exclusive and cites to the discussion in Marnholtz that "domestic duties" and construction work are not mutually exclusive. Id. , ¶14. In essence, West Bend asserts that farming must be a "domestic duty" because that activity occurs on the premises. But, under Marnholtz , that does not make that activity "domestic." Furthermore, although the policy does not define "domestic duties," the policy does define "farming" as follows: " 'Farm' or 'Farming' means the ownership, maintenance, or use of premises for the production of crops or the raising or care of 'livestock', including all necessary operations...." Nothing in this definition would lead a reasonable insured to conclude that "farming" is a "domestic duty," and we see no overlap between the policy's definition of "farming" and the definition of "domestic" adopted by this court in Marnholtz .
¶23 Finally, West Bend argues that the Calumet policy contains an expansive definition of the term "insured premises" and, according to West Bend, that broad definition of "insured premises" should inform the scope of the term "domestic duties." More specifically, West Bend contends that the Calumet policy cannot define "insured premises" broadly to include the farm, provide coverage to persons performing "domestic duties" on the "insured premises," and then define "domestic duties" to exclude duties related to the farm. We reject West Bend's argument because it ignores the key qualifying word, "domestic." It does not follow that, because the policy insured not merely the house but also the farm, the term "domestic" is to be construed differently. Even though the insured premises include a farm, we previously concluded in Marnholtz that a reasonable insured would not understand "domestic duties" to include all activities relating to any part of the insured premises.
¶24 The broad understanding of "domestic duties" advocated by West Bend effectively reads the word "domestic" out of the contract, such that a person is an insured if they are performing any duties relating to the insured premises, completely contrary to our holding in Marnholtz . Under basic principles of contract interpretation, we do not read a policy so as to render any of its terms superfluous. See Stubbe v. Guidant Mut. Ins. Co. , 2002 WI App 203, ¶10, 257 Wis. 2d 401, 651 N.W.2d 318 (insurance policy must be read as a whole so that none of its language is superfluous or meaningless); see also Matter of Kazmierczak , 24 F.3d 1020, 1022 (7th Cir. 1994) ("a proposed contractual interpretation that would read out of a contract language obviously important to one of the parties faces and ought to face a distinctly uphill struggle for judicial acceptance"); RESTATEMENT (SECOND) OF CONTRACTS § 203 cmt. b ( AM. LAW INST. 1981) ("Since an agreement is interpreted as a whole, it is assumed in the first instance that no part of it is superfluous."). Accordingly, we reject West Bend's interpretation because it would read the word "domestic" out of the policy's definition of "insured."[6]
CONCLUSION
¶25 For the foregoing reasons, we reverse the orders of the circuit court, direct the circuit court to grant summary judgment in favor of Calumet Equity Mutual Insurance Company dismissing the claims of West Bend Mutual Insurance Company and David Schaefer, and remand this matter to the circuit court for the award of all applicable statutory costs and fees.
By the Court. -Orders reversed and cause remanded with directions.
This opinion will not be published. See WIS. STAT. RULE 809.23(1)(b)5.

Because David and Raymond share a last name, for clarity we refer to each by their first name.

West Bend makes no argument that Calumet's summary judgment motion should not be granted if we resolve the issue of the interpretation of the phrase "domestic duties" against West Bend.

For convenience, we will now refer only to West Bend regarding arguments made in this court because West Bend and David agree that their interests in this appeal are identical.

All references to the Wisconsin Statutes are to the 2015-16 version unless otherwise noted.

West Bend references a number of facts regarding the historical operation of Raymond's farm in an attempt to argue that David should be covered under Raymond's policy. However, these facts are irrelevant to the disposition of the present appeal, and we do not address them further.

West Bend and Calumet have not discussed the questions of duty to defend and duty to indemnify separately. West Bend mentions the duty to defend in its briefing in this court. However, it never develops an argument that there was a duty to defend David separate from a duty to indemnify under the Calumet policy, and we may not develop an argument for a party. Madely v. RadioShack Corp. , 2007 WI App 244, ¶22 n.8, 306 Wis. 2d 312, 742 N.W.2d 559 (court of appeals need not consider undeveloped arguments).