Annette PETROWSKY, Petitioner-Respondent,

v.

Brad KRAUSE, Respondent-Appellant.

Court of Appeals

*No. 97–2205. Submitted on briefs September 18, 1998.—Decided November 4, 1998.*

(Also reported in 588 N.W.2d 318.)

On behalf of the respondent-appellant, the cause was submitted on the brief of *Russell D. Bohach* of *Brennan & Collins* of Milwaukee.

On behalf of the petitioner-respondent, the cause was submitted on the brief of *Thomas J. McAdams* of *Reinhart, Boerner, Van Deuren, Norris & Rieselbach, S.C.* of Milwaukee.

Before Snyder, P.J., Brown and Nettesheim, JJ.

BROWN, J.   Our state domestic abuse statute applies to certain acts engaged in by "an adult family member or adult household member against another adult family member or adult household member." Section 813.12(1), STATS. "Household member" means any person "currently or formerly residing in a place of abode with another person." Section 813.12(1)(c). In this case, the parties were dating, but were not married. The evidence shows only that they stayed together under one roof when they took frequent trips to a cabin in northern Wisconsin during the summer of 1996. We hold as a matter of law that the evidence is insufficient to find that they were "household mem-

bers" for purposes of the domestic abuse statute. We reverse.

The relevant facts are that Annette Petrowsky and Brad Krause dated from approximately June 1994 until September 1996. During the summer of 1996, they took numerous trips to Krause's parents' cabin in northern Wisconsin. They would stay in the cabin together and then come back to their respective homes in Ozaukee county. They did this repeatedly throughout that summer.

In September 1996, the parties ended their dating relationship. There is evidence that they were in contact after that, although it is disputed who initiated the contacts. These communications caused Krause to contact the police in June 1997 and Petrowsky to petition for a temporary restraining order against Krause under the domestic abuse statute in August 1997. The petition alleged physical and emotional abuse throughout their relationship and a threat of physical violence during a 1997 phone call.

The temporary restraining order was granted. Subsequently, a hearing was held to determine whether an injunction under § 813.12(4), STATS., should be granted against Krause. The trial court found that there was sufficient evidence to conclude that the parties were living together during the summer of 1996 and that there were reasonable grounds to believe that Krause had engaged in or may engage in domestic abuse of Petrowsky. Therefore, the injunction was granted.

The issue on appeal is who constitutes a "household member" under the domestic abuse statute. This involves the construction of a statute. Interpretation of a statute is a question of law that appellate courts

review without deference to the trial court. *See State ex rel. Reimann v. Circuit Court*, 214 Wis. 2d 604, 613, 571 N.W.2d 385, 387 (1997). The relevant statute here is § 813.12(1)(c), STATS., which defines a "household member" for the purposes of domestic abuse restraining orders and injunctions. The domestic abuse statute only applies to abuse by adult family members or adult household members. *See* § 813.12(1)(a). As stated above, the statute defines a household member as "a person currently or formerly residing in a place of abode with another person." Section 813.12(1)(c).

"Whether a statute is ambiguous is a question of law." *See Boltz v. Boltz*, 133 Wis. 2d 278, 284, 395 N.W.2d 605, 607 (Ct. App. 1986). Only if the statute is ambiguous should the court look to the history, legislative intent, and purpose of the statute. *See id.* Otherwise, the court must give statutory language its ordinary and accepted meaning. *See DOR v. Gordon*, 127 Wis. 2d 71, 73–74, 377 N.W.2d 212, 213 (Ct. App. 1985). This meaning may be found in a standard dictionary, as long as the words are not technical. *See Wisconsin Prof'l Police Ass'n v. Waukesha County*, 128 Wis. 2d 256, 260, 381 N.W.2d 598, 599 (Ct. App. 1985).

The statute uses the word "reside" to define the actions of a household member. The plain meaning of reside implies a continuous arrangement. The dictionary definition of reside is "*to dwell permanently or continuously*. . .expressing the idea that a person keeps or returns to a particular dwelling place as his fixed, settled, or legal abode." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1931 (3d ed. 1993) (emphasis added). While we acknowledge that the term "reside" is also a legal term of art, here, the legal and general

meanings are the same. BLACK'S LAW DICTIONARY defines the term by using phrases such as "settled," "permanently," and "continuously." BLACK'S LAW DICTIONARY 1308 (6th ed. 1990). Therefore, the clear language of the statute mandates a continuous living arrangement between the parties in order for them to be considered household members.

The question remains whether Petrowksy met her burden by presenting enough facts to make a prima facie case that she and Krause shared a household. "Although credibility is a matter for the trier of fact, whether a party has met its burden of establishing a prima facie case is a question of law which this court may examine independently without giving deference to the trial court's conclusions." *Burg v. Miniature Precision Components, Inc.*, 111 Wis. 2d 1, 12, 330 N.W.2d 192, 198 (1983).

■

In accordance with the clear language of the statute, in order for Petrowsky to meet her initial burden, the facts must show that the parties were in a continuous living arrangement. Here, even considering the facts in the light most favorable to Petrowsky, we hold that Petrowsky failed to satisfy her burden of proving that the parties were members of the same household. Treating Petrowsky's testimony as true, the evidence in the record shows that the parties would take trips to a cabin in northern Wisconsin. They would stay at the cabin for "[s]ometimes . . . four days, sometimes . . . longer." When asked if she and Krause "resided together during that period," the most Petrowsky could say was that it was "more or less like staying up there . . . like living, but it wasn't, because we came home and we pack up and then we go back up again." Had she testified that the two stayed together while "up north"

and also stayed together while in Ozaukee county, we might well have a different case. We do not think it is important that parties reside together only in one place. We do think it is important that the parties reside together on a continuous basis. When the legislature chose to use the word "reside," it clearly mandated the need to prove a continuous living arrangement. Petrowsky's testimony demonstrated that the two took recreational trips during the summer of 1996. While we can imagine that trips "up north" could have the requisite continuity to establish a household, the facts here do not add up to that occurrence. Petrowsky and Krause dated for over two years while maintaining separate residences. Their summer excursions, while perhaps frequent, did not amount to a domestic living arrangement. The burden was on Petrowsky to show that the parties were living together. We disagree with the trial court's conclusion that she met this burden. Thus, the trial court erred in issuing a domestic abuse injunction under § 813.12(4), STATS. We reverse.[1]

---

[1] Annette Petrowsky is represented in this appeal by Attorney Thomas McAdams and the firm of Reinhart, Boerner, Van Deuren, Norris & Rieselbach, S.C., acting as pro bono counsel pursuant to a pilot program instituted by the court of appeals and the Appellate Practice subcommittee of the Litigation Section of the State Bar of Wisconsin. Attorneys are appointed by the court from a list of volunteers when the court deems the issues to have special merit and one or more of the parties cannot afford an attorney in a civil case. We applaud the time, effort and volunteer spirit of McAdams and his law firm, and we encourage other attorneys and law firms to likewise volunteer to be on the list. Interested attorneys and law firms may contact the State Bar to volunteer for placement on the list of prospective pro bono appellate counsel.

*By the Court.*—Order reversed.