134 Nev., Advance Opinion 68

IN THE SUPREME COURT OF THE STATE OF NEVADA

| | |
|---|---|
| JOHN FRANCIS DUNHAM,<br>Appellant,<br>vs.<br>THE STATE OF NEVADA,<br>Respondent. | No. 73143<br><br>**FILED**<br><br>SEP 06 2018<br><br>ELIZABETH A. BROWN<br>CLERK OF SUPREME COURT<br>BY_____<br>CHIEF DEPUTY CLERK |

Appeal from a judgment of conviction, pursuant to a jury verdict, of home invasion. Ninth Judicial District Court, Douglas County; Nathan Tod Young, Judge.

*Affirmed.*

Kristine L. Brown, Gardnerville,
for Appellant.

Adam Paul Laxalt, Attorney General, Carson City; Mark B. Jackson, District Attorney, and Richard B. Casper, Deputy District Attorney, Minden,
for Respondent.

---

BEFORE PICKERING, GIBBONS and HARDESTY, JJ.

*OPINION*

By the Court, HARDESTY, J.:

Appellant John Dunham was convicted of home invasion under NRS 205.067 when he entered his wife's second home. In this appeal, we must determine whether the word "resides" as used in the definition of "inhabited dwelling" in Nevada's home invasion statute, NRS 205.067(5)(b),

18-34702

requires the "owner or other lawful occupant" to dwell permanently or continuously. We conclude that the district court did not abuse its discretion in refusing Dunham's proffered instruction defining "resides" because an owner need not permanently or continuously dwell in a house for the house to be an inhabited dwelling. Finally, we conclude that the district court's sentence in this case does not constitute cruel and unusual punishment, and we affirm the conviction.

## FACTS AND PROCEDURAL HISTORY

Dunham and his wife Patricia Scripko lived in a rented home in Monterey, California. In October 2015, Scripko purchased in her name only a condominium in Stateline, Nevada. Scripko testified that she originally planned to move to Stateline, but after the purchase, she lived in both the condominium and the Monterey home. Specifically, Scripko explained that she lived and worked in Monterey but spent occasional weekends at the condominium and, at one point, spent half her time in Monterey and half her time at the condominium. Dunham and Scripko began living separately in June 2016, and Dunham moved into the condominium while Scripko remained in Monterey.

In August 2016, Scripko obtained a domestic violence protective order against Dunham prohibiting him from contacting her and requiring that he stay at least 100 yards away from her, her Monterey residence, and the condominium. Scripko testified that because she did not want to have a confrontation with Dunham, she did not visit the condominium from the time she obtained the protective order until October 21, 2016. During that time period, Dunham violated the protective order multiple times by contacting Scripko and entering the condominium. Scripko went to the condominium on October 21, 2016, to meet with her contractor to change the locks and have him perform repairs because she decided to list the

condominium as a vacation rental. On October 21, 2016, shortly before Scripko arrived at the condominium, police found and arrested Dunham in the condominium. After arriving at the condominium, Scripko stayed in the condominium until October 23, 2016.

On October 26, 2016, the day after Dunham was released from jail for his second violation of the protective order, Scripko's contractor went to the condominium to perform repair work. The contractor noticed that the kitchen window adjacent to the front door was broken, and after entering the house, saw Dunham sleeping upstairs and called the police. Deputies responded to the call, and when they entered the condominium, they observed Dunham walking down the stairs, apparently intoxicated. Dunham was arrested and charged with home invasion and burglary. Following a three-day jury trial, the jury found Dunham guilty of home invasion but not guilty of burglary. The district court sentenced Dunham to a maximum term of 96 months in prison, with parole eligibility after 38 months. This appeal followed.

### DISCUSSION

On appeal, Dunham argues that the district court abused its discretion in refusing his proposed jury instruction that defined the word "resides" as used in the "inhabited dwelling" definition in Nevada's home invasion statute to require the dwelling be permanently or continuously occupied. Dunham further appeals his sentence as constituting cruel and unusual punishment. We disagree with both contentions.

*The district court did not abuse its discretion in instructing the jury*

Dunham asks us to vacate his sentence and order a new trial because under *Crawford v. State*, 121 Nev. 744, 751, 121 P.3d 582, 586 (2005), he was entitled to instruct the jury on his theory of the case, and therefore, the district court abused its discretion in refusing to instruct the

jury on the definition of "resides." The defense theory of the case was that Scripko did not "reside" in the condominium for purposes of Nevada's home invasion statute. Dunham offered a jury instruction that defined the term "reside," using a definition from a Wisconsin case: "Reside means to dwell permanently or continuously. It expresses an idea that a person keeps or returns to a particular dwelling place as his fixed, settled, or legal abode. The plain meaning of reside implies a continuous arrangement."

The State objected to the proffered jury instruction, arguing that the Wisconsin definition was based on a distinguishable statute that involved domestic violence rather than the property-based offense of home invasion. The State did not offer a competing jury instruction but argued that the meaning of "resides" does not require an intent to remain permanently. The district court concluded that the jury did not need to be instructed on the meaning because the word "resides" is not defined in the statute, and the jury could use common sense to determine the meaning.

"We generally review a district court's refusal to give a jury instruction for an abuse of discretion or judicial error." *Nay v. State*, 123 Nev. 326, 330, 167 P.3d 430, 433 (2007). "This court has consistently held that the defense has the right to have the jury instructed on its theory of the case as disclosed by the evidence, no matter how weak or incredible that evidence may be." *Crawford*, 121 Nev. at 751, 121 P.3d at 586 (internal quotation marks omitted). But the defense is not "entitled to instructions that are misleading, inaccurate, or duplicitous." *Id.* at 754, 121 P.3d at 589. "[W]hether a proffered instruction is a correct statement of the law presents a legal question which we review de novo." *Nay*, 123 Nev. at 330, 167 P.3d at 433.

When interpreting a statute, this court begins with a statute's plain language. *State v. Lucero*, 127 Nev. 92, 95, 249 P.3d 1226, 1228 (2011). Nevada's invasion of the home offense is codified at NRS 205.067(1) and provides:

> A person who, by day or night, forcibly enters an inhabited dwelling without permission of the owner, resident or lawful occupant, whether or not a person is present at the time of the entry, is guilty of invasion of the home.

NRS 205.067(5)(b) defines "[i]nhabited dwelling" as "any structure, building, house, room, apartment, tenement, tent, conveyance, vessel, boat, vehicle, house trailer, travel trailer, motor home or railroad car in which the owner or other lawful occupant *resides*." (Emphasis added.)

The crime of home invasion requires that the unlawful and forcible entry be into a dwelling, and that the dwelling be inhabited. A "dwelling" is "a structure or part thereof that is designed or intended for occupancy as a residence or sleeping place," NRS 205.081 (defining "dwelling" for unlawful entry or occupancy statutes), and can include a variety of structures, *see* NRS 205.067(5)(b). NRS 205.067(5)(b) clarifies that a dwelling is inhabited when "the owner or other lawful occupant resides" in it. We disagree with Dunham's assertion that an owner or lawful occupant only "resides" in a dwelling under NRS 205.067 if the owner or other lawful occupant permanently or continuously lives in it.

A vacation condominium, like the one in this case, is an inhabited dwelling, even when not presently occupied, so long as the owner or lawful occupant intends to return and continue to use it as a residence or a sleeping place in the future. *Cf.* NRS 205.081 (defining "dwelling" as a structure used as "a residence or sleeping place"); *see also People v. DeRouen*, 44 Cal. Rptr. 2d 842, 845 (Ct. App. 1995) (concluding that "the

occupant of a vacation home reasonably expects the same protection from unauthorized intrusions as the occupant of any other residence"), *disapproved of on other grounds by People v. Allen*, 984 P.2d 486, 499-500 (Cal. 1999).

Scripko, while not present at the time of Dunham's entry, was using the condominium for dwelling purposes. *Cf.* Cal. Penal Code § 459 (West 2010) ("'[I]nhabited' means currently being used for dwelling purposes, whether occupied or not."). Even though Scripko decided to rent out the condominium in the future, she continued to use the condominium for sleeping purposes while preparing it for rent. Scripko liked to visit the condominium for a few days at a time, and her extended absences from the condominium reflected a desire to avoid conflict with Dunham, not an intent to stop using the condominium as a dwelling place. Further, she stayed at the condominium the weekend before Dunham was arrested for breaking into it, and the condominium was not ready to list as a rental property until December 2016, two months after this incident. *Cf. People v. Burkett*, 163 Cal. Rptr. 3d 259, 267 (Cal. Ct. App. 2013) (interpreting Cal. Penal Code § 459's definition of "inhabited" and concluding there was no evidence that the burglarized home "was currently being used by someone for dwelling purposes" when the tenant had removed all personal items from the house and the new lawful occupant had not yet moved in).

Although Dunham's argument suggests that the definition of "inhabited dwelling" is ambiguous because of the use of the term "resides," and the proper interpretation of "resides" is to require permanent or continuous occupancy, we disagree. Dunham's proffered jury instruction was taken from a Wisconsin case involving a domestic abuse statute that "applies to certain acts engaged in by 'an adult family member or adult

household member against another adult family member or adult household member.'" *Petrowsky v. Krause*, 588 N.W.2d 318, 319 (Wis. Ct. App. 1998) (quoting Wis. Stat. Ann. § 813.12). The issue in *Petrowsky* was "who constitutes a 'household member' under the domestic abuse statute." *Id.* The relevant statute defined a "household member" as "a person currently or formerly residing in a place of abode with another person." *Id.* (quoting Wis. Stat. Ann. § 813.12(1)(c)).

Dunham's reliance on *Petrowsky*'s definition of "reside" is misplaced because the instruction is based on a domestic violence statute that defines when a person resides with another person enough such that he or she can be considered a "household member." But "resides," as used in NRS 205.067(5)(b), relates to whether the property is an "inhabited dwelling" and whether the nature of the use of a dwelling is such that it deserves more protection than if it were uninhabited. *See* Hearing on A.B. 593 Before the Senate Judiciary Comm., 65th Leg. (Nev., June 13, 1989) (indicating that the Legislature enacted Nevada's home invasion statute intending to hold individuals accountable in scenarios where someone entered a home but retreated before committing a felony, because in those situations, it was difficult to convict someone for burglary since oftentimes the prosecutor could not prove that the individual had the intent to commit a felony); 1989 Nev. Stat., ch. 631, § 3, at 1452; Hearing on A.B. 593 Before the Assembly Judiciary Comm., 65th Leg. (Nev., April 25, 1989) (indicating the home invasion bill was intended to protect the "sanctity of the home"); *cf. DeRouen*, 44 Cal. Rptr. 2d at 844 ("[A] burglary of an inhabited dwelling involves an invasion of perhaps the most secret zone of privacy, the place where trinkets, mementos, heirlooms, and other stuff of personal history are kept." (internal quotation marks omitted)). While defining what

Supreme Court
OF
Nevada

(O) 1947A

7

constitutes a household member would necessarily include determining the permanency and continuity of a living arrangement between two people, inhabiting a dwelling does not require permanent or continuous use, and an individual is not limited to inhabiting one dwelling at a time.

We reject the notion that the word "resides" compels interpreting "inhabited dwelling" as requiring permanent or continuous use. Our interpretation is consistent with other jurisdictions that have considered whether a structure is an inhabited dwelling in the context of property crimes. For example, in *Hess v. State*, 207 S.E.2d 580, 581 (Ga. Ct. App. 1974), the owner of a house "sporadically" stayed there during the ten years she owned it. In assessing whether the house was a dwelling in the context of a burglary charge, the court determined that "[t]here is no requirement in the law that a house be continuously occupied in order to be a 'dwelling.' It is sufficient that it is occasionally occupied for residential purposes . . . ." *Id.* at 582 (internal quotation marks omitted). Additionally, the Oregon court of appeals determined that under Oregon's burglary statute, a home that "had been occupied regularly for years but had been vacant and unfurnished for six months before [the] defendant's entry [and] was to be sold as a residence and was ready for occupancy" was a dwelling. *State v. Kautz*, 39 P.3d 937, 939-40 (Or. Ct. App. 2002).

In *Burkett*, the court interpreted "inhabited," which under the California burglary statute means that the structure is "currently being used for dwelling purposes, whether occupied or not." 163 Cal. Rptr. 3d at 264 (quoting Cal. Penal Code § 459). The court explained that the relevant inquiry in determining whether the structure is inhabited is focused on "the nature of the current use of the building, which is to say the use at the time of the entry rather than the design of the building, its customary use, or its

current occupancy." *Id.* (citation omitted). Although the court determined that the dwelling was not inhabited in *Burkett*, the court identified various factors that give rise to finding that a structure is inhabited although not occupied at the time of the entry, including whether the owner or occupant (1) intends to return to the structure, (2) has belongings in the structure, or (3) has recently moved into the structure. *Id.* at 266. Finally, in *State v. Steadman*, the South Carolina supreme court determined that the trial court was correct in instructing the jury that a dwelling need not be "constantly inhabited every day or night of the year." 186 S.E.2d 712, 716 (S.C. 1972).

Though we acknowledge that these jurisdictions may have statutes that define "inhabited dwelling" differently than NRS 205.067(5)(b), *see, e.g.*, Or. Rev. Stat. § 164.205(2) (2017) ("'Dwelling' means a building which regularly or intermittently is occupied by a person lodging therein at night, whether or not a person is actually present."), we agree with these jurisdictions that a dwelling need not be continuously or permanently occupied to be inhabited, as nothing in NRS 205.067(5)(b) compels such an interpretation.

Dunham's proffered jury instruction requiring the jury to find permanent or continuous occupancy of the property as an element of the crime was therefore a misstatement of Nevada's home invasion statute. Accordingly, we conclude that the district court did not abuse its discretion in refusing Dunham's proffered instruction because it was not an accurate statement of the law. *See Crawford*, 121 Nev. at 754, 121 P.3d at 589.

*Dunham's sentence is not cruel and unusual punishment*

Dunham argues that his sentence constitutes cruel and unusual punishment because it is excessive when compared to the severity of the crime. Dunham further emphasizes that the district court's sentence was lengthier than both the Department of Parole and Probation's recommendation of 48 months' imprisonment with parole eligibility after 12 months, and the State's recommendation of 72 months' imprisonment with parole eligibility after 14 months. Additionally, Dunham argues that there were several mitigating factors, including that prior to this case, he had only one misdemeanor, he had substance abuse problems, he had familial support, and he was a good father.

"This court has consistently afforded the district court wide discretion in its sentencing decision." *Chavez v. State*, 125 Nev. 328, 348, 213 P.3d 476, 490 (2009). "A sentence within the statutory limits is not cruel and unusual punishment unless the statute fixing punishment is unconstitutional or the sentence is so unreasonably disproportionate to the offense as to shock the conscience." *Blume v. State*, 112 Nev. 472, 475, 915 P.2d 282, 284 (1996) (internal quotation marks omitted). Additionally, "[a] recommendation of the Department of Prisons or the Department of Parole and Probation has no binding effect on the courts." *Etcheverry v. State*, 107 Nev. 782, 786, 821 P.2d 350, 352 (1991). Similarly, a district court does not abuse its discretion by imposing a sentence in excess of the State's recommendation. *Goodson v. State*, 98 Nev. 493, 495, 654 P.2d 1006, 1007 (1982).

Dunham does not challenge the constitutionality of the statute. Further, NRS 205.067(2) provides that a person convicted of home invasion can be sentenced to a minimum term of 1 year in prison and to a maximum term of 10 years. Here, Dunham was sentenced within that guideline. Therefore, Dunham's sentence does not constitute cruel and unusual punishment.

## *CONCLUSION*

We conclude that the district court did not abuse its discretion in refusing Dunham's proffered jury instruction because it was an inaccurate statement of the law taken from a distinguishable Wisconsin case involving that state's domestic violence statute. We further conclude that Dunham's sentence does not constitute cruel and unusual punishment. Accordingly, we affirm the judgment of conviction.

_____, J.
Hardesty

We concur:

_____, J.
Pickering

_____, J.
Gibbons