COURT OF APPEALS
DECISION
DATED AND FILED

July 11, 2023

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.    **2021AP1446**

STATE OF WISCONSIN

Cir. Ct. No. 2019CV8112

IN COURT OF APPEALS
DISTRICT I

QUINTANA S. LEE,

PLAINTIFF-APPELLANT,

V.

NATIONWIDE INSURANCE COMPANY OF AMERICA,

DEFENDANT-RESPONDENT.

APPEAL from an order of the circuit court for Milwaukee County: CHRISTOPHER R. FOLEY, Judge. *Affirmed.*

Before Brash, C.J., Dugan and White, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1    PER CURIAM. Quintana S. Lee appeals from an order of the circuit court granting summary judgment in favor of Nationwide Insurance Company of America and dismissing the complaint that Lee filed against Nationwide alleging breach of contract, a claim for statutory interest, and bad faith after Nationwide denied a claim that Lee made under her homeowner's insurance policy.[1]

¶2    Upon review, we conclude that the property did not meet the definition of a "residence premises" under the policy because Lee did not reside at the property. Therefore, the property was not covered under the homeowner's insurance policy Lee obtained through Nationwide. Accordingly, we affirm the circuit court's order.

## BACKGROUND

¶3    Following the death of her mother, Lee inherited a duplex in Milwaukee located at 3420 North 13th Street. At the time Lee inherited the property, there were two tenants. Lee evicted the tenants in August 2018, and the property was left with extensive damage, including broken windows, holes in the walls, and dog feces throughout the property.

¶4    Lee alleged that she began repairing the property for the stated purpose of being able to live there in the future. According to Lee, she paid the overdue property taxes; made repairs to the roof, chimney, windows and front porch; connected the gas and electrical utilities; and moved a couch, a table and a

---

[1] The record is inconsistent with regard to the spelling of Lee's name, and we use the spelling provided in the caption.

2

television into the property. While she was repairing the property, however, Lee continued to reside at a residence on Meinecke Avenue in Milwaukee.

¶5 Lee obtained a homeowner's insurance policy for the property from Nationwide dated September 18, 2018, and for which Lee made two of twelve premium payments. In her application for the policy, Lee indicated that the property was her primary residence, that the property was not going through extensive remodeling or additions, and that the condition of the property was "excellent." She further indicated that she obtained the property by purchasing the property for $77,000.

¶6 The insurance policy issued to Lee insured the dwelling on the "residence premises." The policy then defined "residence premises" as "[t]he one family dwelling where you reside," "[t]he two, three or four family dwelling where you reside in at least one of the family units," or "[t]hat part of any other building where you reside." The policy also contained a provision stating that vandalism and malicious mischief was not covered by the policy.

¶7 On or around October 21, 2018, a fire broke out at the property, resulting in fire and smoke damage throughout the property. Reports subsequently prepared by the Milwaukee Fire Department, Analytical Forensic Associates, and NEFCO Fire Investigations found that there was evidence of gasoline throughout the property and a ladder to a second-story window where the fire was thought to

have originated, and these findings indicated that the fire was intentionally set. However, Nationwide never accused Lee of being involved in the fire.[2]

¶8      Lee submitted a claim to Nationwide for the damage caused by the fire, and Nationwide denied her claim on July 11, 2019, because it determined that the fire appeared to have been intentionally set and the property was vacant and unoccupied at the time of the fire. Accordingly, Nationwide took the position that the property was not a "residence premises" covered by the policy and, in the alternative, that the vandalism and malicious mischief exclusion applied.

¶9      As a result of the denial, Lee filed a complaint against Nationwide, alleging breach of contract, a claim for interest under WIS. STAT. § 628.46 (2021-22),[3] and bad faith.[4] Both parties subsequently moved for summary judgment.[5] In its motion, Nationwide argued that the property was not covered under the policy because it was not a "residence premises" within the meaning of the policy and, in the alternative, that the vandalism and malicious mischief exclusion applied and excluded the property from coverage. By contrast, Lee argued that the property was a residence premises covered under the policy because she intended to reside

---

[2] Based on information contained in the record, it is possible that the former tenants were involved with starting the fire at the property. However, for our purposes, we need not address the cause of the fire further, and we do not express an opinion about who may be responsible for the fire.

[3] All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

[4] The complaint named two additional defendants—the former tenants—that have since been dismissed from the case.

[5] Pursuant to a motion for bifurcation, the circuit court bifurcated Lee's breach of contract claim from her bad faith claim, and Lee's bad faith claim was stayed pending the outcome of her breach of contract claim. Thus, the motions for summary judgment only pertain to Lee's breach of contract claim.

at the property in the future and, to that end, she was repairing the property. She additionally argued that she could maintain another residence—her apartment on Meinecke Avenue—in addition to the property, without negating coverage for the property under the policy. She further argued that the vandalism and malicious mischief exclusion did not apply to the fire that occurred at the property because "fire" was considered distinct from "vandalism and malicious mischief" in the policy.

¶10     In a written decision, the circuit court agreed with Nationwide and found that there was no coverage for the property under the policy because the property was not a residence premises given that Lee was not residing at the property. In reaching its decision, the circuit court stated that Lee did not reside at the property under the plain and ordinary meaning of the policy language interpreted in a way that an insured would interpret the language. Indeed, the circuit court stated that while it "d[id] not doubt it was Ms. Lee's intention to reside there in the future and there was some less than nominal presence to that end, … it is undisputed she never resided in those premises." The circuit court also "summarily indicate[d]" that the vandalism and malicious mischief exclusion applied to the fire that occurred at the property. Thus, the circuit court granted Nationwide's motion for summary judgment and dismissed Lee's complaint.

¶11     Lee now appeals.

## DISCUSSION

¶12     On appeal, Lee raises the same two main arguments. First, she argues that the property was a "residence premises" covered by the policy she had through Nationwide. Second, she argues that the exclusion for vandalism and malicious mischief does not apply to the fire that occurred at the property. We

disagree, and we conclude that the property was not a residence premises covered by the policy because Lee did not reside at the property any time before or at the time of the fire. As a result of our conclusion, we do not address Lee's remaining argument that the exclusion for vandalism and malicious mischief does not apply to the fire that occurred at the property. *See State v. Blalock*, 150 Wis. 2d 688, 703, 442 N.W.2d 514 (Ct. App. 1989) ("[C]ases should be decided on the narrowest possible ground[.]").

¶13　Summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." WIS. STAT. § 802.08(2). "Whether the circuit court properly granted summary judgment is a question of law that this court reviews de novo." *Racine Cnty. v. Oracular Milwaukee, Inc.*, 2010 WI 25, ¶24, 323 Wis. 2d 682, 781 N.W.2d 88 (citation omitted).

¶14　In this case, whether summary judgment was properly granted requires that we review the insurance policy that Lee obtained through Nationwide. "The interpretation of the language in an insurance policy presents a question of law, which this court reviews independently." *Marnholtz v. Church Mut. Ins. Co.*, 2012 WI App 53, ¶10, 341 Wis. 2d 478, 815 N.W.2d 708. "We first look to the language of the agreement." *Id.* If the language is unambiguous, we apply the language as it is written. *Id.* "[I]f the word or phrase is reasonably susceptible to more than one interpretation," the language is considered ambiguous, and we resolve any ambiguity "against the insurer and in favor of the insured seeking coverage." *Id.* Overall, the interpretation of language in an insurance policy "should advance the insured's reasonable expectations of coverage." *Id.* (citation omitted). "However, we do not interpret insurance

policies to provide coverage for risks that the insurer did not contemplate or underwrite and for which it has not received a premium." ***American Fam. Mut. Ins. Co. v. American Girl, Inc.***, 2004 WI 2, ¶23, 268 Wis. 2d 16, 673 N.W.2d 65

¶15    Turning to the insurance policy here, the parties' dispute focuses on whether the property meets the definition of a "residence premises" and is, therefore, covered under the policy. Lee argues that she intended to reside at the property in the future and that she was repairing the property for the purpose of eventually living there. She indicates that she made repairs to the roof and chimney, replaced some windows, fixed the front porch, paid the property taxes, evicted two tenants, moved a couch, a table and a television into the property, and turned on the electric and gas utilities. Lee further argues that there was no requirement that the property be her primary or only residence in order to qualify as a residence premises under the policy, and she argues that, should this court conclude that the property is not a residence premises, coverage for any damage to the property under the insurance policy she paid for would be rendered "entirely illusory."

¶16    By contrast, Nationwide argues that Lee's future intent to reside at the property does not transform the property into a residence premises within the meaning of the policy. Instead, Nationwide emphasizes that Lee had no permanent or continuous presence at the property given that she had never slept at the property, cooked a meal there, or engaged in any activities commonly understood as the activities of a person engaged in living at the property. Nationwide further argues that Lee's argument that she could maintain an additional residence is irrelevant because the policy does not require that Lee

reside at the property as her only or primary residence, but she did need to reside there in some capacity.

¶17     Nationwide also argues that any coverage under the policy was not "entirely illusory" because it believed that, based on Lee's application, it was insuring the property as Lee's primary residence. In fact, Nationwide asserts that Lee misrepresented that she was currently using the property as her primary residence in her application and that the property was not undergoing any extensive remodeling or additions. Nationwide further highlights that Lee misrepresented on her application that she purchased the property for $77,000, as opposed to inheriting the property, and that Lee misrepresented that the property was in excellent condition, when in fact it was only assessed for $31,900 and had, for example, broken windows, holes in the walls, and dog feces throughout the property. With the parties' arguments in mind, we turn to the language of the policy.

¶18     The policy that Lee obtained through Nationwide provides coverage for the dwelling on the "residence premises." The residence premises is then defined as (1) "[t]he one family dwelling *where you reside*"; (2) "[t]he two, three or four family dwelling *where you reside* in at least one of the family units"; or (3) "[t]hat part of any other building *where you reside*." (Emphasis added.) "Reside" is not itself defined in the policy. Consequently, we turn to dictionaries and relevant case law to determine its definition. *See Acuity v. Bagadia*, 2008 WI 62, ¶22, 310 Wis. 2d 197, 750 N.W.2d 817 (stating that when a term in an insurance policy is not defined in the policy "we consult dictionaries and the relevant case law that has addressed the issue").

¶19     The dictionary defines "reside" in part as "to dwell permanently or continuously" and "express[es] the idea that a person keeps or returns to a particular dwelling place as his [or her] fixed, settled, or legal abode." *Reside*, WEBSTER'S THIRD NEW INT'L DICTIONARY (3d ed. 1993). The synonyms for "reside" include live, dwell, and stay. ***Id.***

¶20     In its brief, Nationwide provides additional definitions for reside, including those from the *Merriam-Webster Dictionary* and the *Cambridge Dictionary*. *Merriam-Webster* defines "reside" as "to dwell permanently or continuously: occupy a place as one's legal domicile," and the *Cambridge Dictionary* defines reside as "to live in a place." *Reside*, MERRIAM-WEBSTER DICTIONARY, https://www.merriam-webster.com/dictionary/reside (last visited June 13, 2023); *Reside*, CAMBRIDGE DICTIONARY, https://dictionary.cambridge.org/us/dictionary/english/reside (last visited June 13, 2023). As the circuit court stated in summing up the definitions of reside, "Definitions of reside or residence (and dwell) almost invariably include reference to 'live in.'" Ultimately, to reside requires a sense of permanent or continuous use of the property for activities commonly required for living and requires a continuous presence at the property.

¶21     In fact, this court has previously interpreted "reside" in the context of the domestic abuse statute and concluded that "[t]he plain meaning of reside implies a continuous arrangement." ***Petrowsky v. Krause***, 223 Wis. 2d 32, 35-36, 588 N.W.2d 318 (Ct. App. 1998). There, we analyzed whether the parties—an unmarried couple—were members of the same household for purposes of the domestic abuse statute when they maintained separate residences, but "stayed together under one roof" when they took trips. ***Id.*** at 33-34. There, "[h]ousehold member" was defined in the statute as "any person 'currently or formerly *residing*

in a place of abode with another person.'" ***Id.*** at 35 (emphasis added; citation omitted). We concluded that the parties were not members of the same household because the couple's trips did not amount to residing together given that the trips were not "a continuous living arrangement." ***Id.*** at 36-37.

¶22 Applying the definition of "reside" here, we conclude that Lee did not reside at the property such that it meets the definition of a "residence premises" covered by the policy. Lee failed to maintain any permanent or continuous presence at the property such that we could conclude that she was residing at the property. Lee never slept at the property, she had minimal belongings at the property consisting of a couch, a table, and a television, and she generally spent very little time at the property from the time that she inherited it until the time of the fire. Indeed, Lee continued to use her Meinecke Avenue address during the time period in which she claims to have been residing at the property.[6] In short, Lee had no permanent or continuous presence at the property such that she could be said to have been living at the property and, thus, residing there. Accordingly, we conclude that the property does not amount to a residence premises within the meaning of the policy.

¶23 Furthermore, we likewise find irrelevant Lee's argument that her residence on Meinecke Avenue should not, by itself, defeat coverage for the property under the policy because the policy does not require that Lee be primarily or only residing at the property, as Lee's argument would require. Rather, the policy requires that Lee reside at the property in some capacity by maintaining a

_____

[6] In fact, Lee used her address on Meinecke Avenue as her address for the August evictions of the tenants and for the complaint filed in this case.

permanent or continuous presence at the property, and whether the property was an only, primary, or even secondary dwelling is irrelevant for our purposes. Thus, we conclude that Lee's lack of any permanent or continuous presence at the property, as opposed to her additional address on Meinecke Avenue, defeats coverage in this instance.

¶24 We further reject Lee's reliance on ***Johnson v. Mt. Morris Mutual Insurance Co.***, 2012 WI App 3, 338 Wis. 2d 327, 809 N.W.2d 53, to argue that coverage exists for a property undergoing repairs for the purpose of someday serving as a residence. ***Johnson*** interpreted WIS. STAT. § 632.05(2)[7] and the definition of the word "occupy." *See id.*, ¶¶1, 7. There, we interpreted occupy in terms of possession and "use" of a dwelling "even if that use is not actually living in the dwelling." *Id.*, ¶¶15-16. Here, neither § 632.05(2), nor the definition of "occupy" is at issue. Rather, we are confronted with the definition of "residence premises" and the word "reside" as a precondition for coverage under an insurance policy.

¶25 Moreover, we observe that ***Johnson*** is factually dissimilar to Lee's case because we recognized there that while the Johnsons "had never spent the night in the home," they had been on the property "on an almost [] daily basis" for the two-month period prior to the fire that destroyed their home. *Id.*, ¶3. Thus, we

---

[7] WISCONSIN STAT. § 632.05 provides in part:

> Total Loss. Whenever any policy insures real property that is owned and occupied by the insured primarily as a dwelling and the property is wholly destroyed, without criminal fault on the part of the insured or the insured's assigns, the amount of the loss shall be taken conclusively to be the policy limits of the policy insuring the property.

concluded that the Johnsons "occupied" the home because they were consistently "using" the dwelling "even if that use is not actually living in the dwelling." *Id.*, ¶¶1, 15-16. By contrast, the record lacks any evidence that Lee maintained a daily presence at the property similar to the presence maintained by the Johnsons. Thus, we conclude that Johnson does not apply to this case, and we do not discuss Lee's reliance on *Johnson* further.

## CONCLUSION

¶26 In sum, we conclude that the property was not covered by the policy, and therefore, we affirm the circuit court's order granting summary judgment in favor of Nationwide and dismissing Lee's complaint. The property was not a "residence premises" within the meaning of the policy, and therefore, it was not afforded coverage under the policy.

*By the Court.*—Order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.