**COURT OF APPEALS**
**DECISION**
**DATED AND FILED**

**August 29, 2023**

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2021AP1591**

STATE OF WISCONSIN

Cir. Ct. No. 2020CV3423

IN COURT OF APPEALS
DISTRICT I

---

BRAKETOWN USA, INC., D/B/A MAC-TECH TECHNICAL SERVICES, INC.,

PLAINTIFF-APPELLANT,

V.

MARKEL INSURANCE COMPANY,

DEFENDANT-RESPONDENT,

BREANNA H. KUEHN,

DEFENDANT.

---

APPEAL from an order of the circuit court for Milwaukee County: DAVID C. SWANSON, Judge. *Reversed and cause remanded.*

Before White, C.J., Donald, P.J., and Dugan, J.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1     PER CURIAM. Braketown USA, Inc. d/b/a Mac-Tech Technical Services, Inc. (Braketown) appeals from an order of the circuit court granting summary judgment in favor of Markel Insurance Company (Markel) and denying Braketown coverage under the insurance policy Braketown had with Markel for claims related to two complaints filed by a former employee. For the reasons set forth below, we reverse, and we remand with instructions to enter summary judgment in favor of Braketown and for further proceedings consistent with this opinion.

## BACKGROUND

¶2     Breanna H. Kuehn, a former Braketown employee, filed a Labor Standards Complaint with the Wisconsin Department of Workforce Development, Equal Rights Division (ERD) on May 13, 2019. In her complaint, Kuehn alleged that Braketown failed to pay her for two hours of vacation time on one of her April paychecks, and failed to deposit wages that were deducted from one of her May paychecks into her Health Savings Account (HSA).

¶3     However, by the time Kuehn filed her Labor Standards Complaint, Braketown had already resolved the complaint. Braketown was unaware at the time that it processed Kuehn's April paycheck that the two hours of vacation time had been approved by Kuehn's supervisor, and once it was aware of the approval, it included the time on her next paycheck. Braketown had also already processed the deposit for Kuehn's HSA account on May 3, 2019, and the deposit was made into Kuehn's HSA on May 6, 2019. Consequently, Kuehn's Labor Standards Complaint was closed and not pursued further. Braketown processed Kuehn's

Labor Standards Complaint internally, and it did not seek outside assistance in responding to Kuehn's Labor Standards Complaint.

¶4    Also on May 13, 2019, Kuehn filed a Retaliation Complaint with the ERD alleging a violation of the Wisconsin Fair Employment Act (WFEA), WIS. STAT. §§ 111.31-.395 (2021-22).[1]   In particular, Kuehn alleged that Braketown terminated her employment on May 9, 2019, in retaliation for her threatening on May 6, 2019, to file a claim under the Fair Labor Standards Act (FLSA), 29 U.S.C. §§ 201-219, if Braketown failed to timely process the deposit for her HSA. Specifically, in an email exchange on May 6, 2019, between Kuehn and Julie Ryan from Braketown's Human Resources Department, Ryan wrote to Kuehn that the payroll deposit for the HSA was processed and deposited, and Kuehn responded, "I'm glad that it was deposited, as if it wasn't this morning or I had not heard from you this morning, I would have been filing an FLSA complaint." Braketown received a Notice of Complaint from the ERD on July 24, 2019, and it later received a probable cause determination from the ERD on January 21, 2020.

¶5    On February 7, 2020, Braketown filed a claim in connection with Kuehn's Retaliation Complaint under its insurance policy with Markel.  Markel denied Braketown's claim.  In a letter to Braketown, Markel stated that Braketown failed to provide timely notice of its claim.  Markel determined that the Labor Standards Complaint and the Retaliation Complaint were considered one claim under the insurance policy as a result of the "common nexus" between the two. Because the Labor Standards Complaint was dated May 14, 2019, and Braketown

---

[1] All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

received notice of that complaint in May 2019, Markel determined that Braketown's claim was covered by the previous effective dates of the insurance policy for May 24, 2018 to May 24, 2019. Therefore, Markel determined that Braketown's notice was required to be made within the notice period for those effective dates of the policy. Markel further determined that Braketown's claim was untimely because Braketown provided notice of its claim on February 7, 2020, which was outside of the applicable notice period and, therefore, Braketown's claim was not covered under the policy.

¶6 Braketown filed a complaint in Milwaukee County Circuit Court on June 10, 2020, requesting a declaratory judgment that its claim was covered under the insurance policy and that Markel had a duty to defend Braketown.[2] On September 11, 2020, the parties both moved for summary judgment and provided a set of stipulated facts.

¶7 Braketown filed an amended complaint on December 2, 2020, and asserted additional causes of action for breach of contract and bad faith. Kuehn subsequently filed an answer and a counterclaim on December 18, 2020, and asserted a counterclaim for a violation of the FLSA related to Braketown's failure to pay her the two hours of vacation time, Braketown's failure to deposit her wages into her HSA, and her termination from her employment with Braketown. She additionally asserted a new violation of the FLSA related to a change that Braketown made to its employee break-time policy. Braketown immediately reported Kuehn's FLSA counterclaim to Markel on December 22, 2020. In

---

[2] Braketown named Kuehn as a defendant pursuant to WIS. STAT. § 806.04(11) as a party with an interest affected by the action. Braketown does not seek relief from Kuehn, and Kuehn is not a party to the current appeal.

response to Kuehn's FLSA counterclaim, Braketown and Markel filed supplemental briefs in support of their respective motions for summary judgment, along with a supplement to the stipulated facts.

¶8      Overall, the circuit court agreed with Markel and found that the Labor Standards Complaint and the Retaliation Complaint were "Interrelated Wrongful Acts" under the policy definitions and, therefore, Braketown's claim was untimely because Braketown did not provide notice of its claim until February 7, 2020, when the applicable policy for a claim dated May 2019 was no longer in effect.  The circuit court again agreed with Markel that the FLSA counterclaim met the policy's definition of Interrelated Wrongful Acts and notice of that claim was also untimely.  The circuit court entered summary judgment in favor of Markel and dismissed Braketown's complaint.  Braketown appeals.

## DISCUSSION

¶9      Summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  WIS. STAT. § 802.08(2).  "Whether the circuit court properly granted summary judgment is a question of law that this court reviews de novo."  *Racine Cnty. v. Oracular Milwaukee, Inc.*, 2010 WI 25, ¶24, 323 Wis. 2d 682, 781 N.W.2d 88 (citation omitted).

¶10      Reviewing the parties' arguments for summary judgment also requires us to interpret the insurance policy that Braketown had with Markel.  "The interpretation of the language in an insurance policy presents a question of law, which this court reviews independently."  *Marnholtz v. Church Mut. Ins. Co.*, 2012 WI App 53, ¶10, 341 Wis. 2d 478, 815 N.W.2d 708.  "We

first look to the language of the agreement." *Id.* If the language is unambiguous, we apply the language as it is written. *Id.* "[I]f the word or phrase is reasonably susceptible to more than one interpretation," the language is considered ambiguous, and we resolve any ambiguity "against the insurer and in favor of the insured seeking coverage." *Id.* Overall, the interpretation of language in an insurance policy "should advance the insured's reasonable expectations of coverage." *Id.* (citation omitted). "However, we do not interpret insurance policies to provide coverage for risks that the insurer did not contemplate or underwrite and for which it has not received a premium." *American Fam. Mut. Ins. Co. v. American Girl, Inc.*, 2004 WI 2, ¶23, 268 Wis. 2d 16, 673 N.W.2d 65.

¶11 Turning to the language of Braketown's insurance policy with Markel, the insurance policy describes that it provides "Claims Made Coverage," meaning "[t]he coverage afforded by this policy only applies to Claims that are first made against the Insured during the Policy Period or the Extended Reporting Period, if purchased."[3] The policy then states that it covers (1) "Loss" due to an "Employment Practices Claim" made as the result of a "Wrongful Employment Practice" and (2) "Claim Expenses" related to a "Wage and Hour Claim" as a result of a "Wage and Hour Wrongful Act."

¶12 The policy defines Claim Expenses as "reasonable and necessary fees, costs and expenses" incurred by Braketown but not including "salary, wages,

---

[3] Braketown and Markel provide insurance policies with effective dates of May 24, 2018, to May 24, 2019; May 24, 2019, to May 24, 2020; and May 24, 2020, to May 24, 2021. The parties agree that the operative definitions in those policies are identical, and as explained further, the date of the policy is primarily relevant for determining the timeliness of Braketown's notice.

overhead, benefit expenses or charges of any kind associated with Insured Persons or the Insurer." The policy further defines Wage and Hour Wrongful Act as: "an actual or alleged violation of the Fair Labor Standards Act (except the Equal Pay Act) or any other law concerning wage and hour practices[.]" A Wrongful Employment Practice does not include a Wage and Hour Wrongful Act.

¶13 The policy also provides that "Interrelated Wrongful Acts" are considered a "Single Claim" under the policy. Interrelated Wrongful Acts are then defined as "Wrongful Acts … that have as a common nexus any fact, circumstance, situation, event, transaction, cause or series of related facts, circumstances, situations, events, transactions or causes."

¶14 For a claim to be covered under the policy, Braketown is required to give Markel notice "as soon as practicable …, but in no event later than" ninety days after expiration of the policy period in which the claim is made or the expiration of the extended reporting period. The notice period for a claim resulting from Interrelated Wrongful Acts is based upon the date of the earliest claim. In this case, Braketown had three relevant policy periods with Markel for determining whether notice was timely: (1) effective dates of May 24, 2018, to May 24, 2019, (2) effective dates of May 24, 2019, to May 24, 2020, and (3) effective dates of May 24, 2020, to May 24, 2021.

¶15 On appeal, Braketown raises several arguments why we should reverse the circuit court's order granting summary judgment for Markel. The first of these arguments is that Kuehn's Labor Standards Complaint is not a Wage and Hour Wrongful Act within the meaning of the policy and, as such, cannot be combined as a single claim with the Retaliation Complaint or the FLSA counterclaim as Interrelated Wrongful Acts. Braketown thus argues that its notice

was timely because notice was not required during the notice period for the first set of effective dates from May 24, 2018 to May 24, 2019. Alternatively, Braketown argues that the Labor Standards Complaint is not an Interrelated Wrongful Act. Braketown also argues that the "notice-prejudice" statute codified in WIS. STAT. § 632.26(2) applies and preserves coverage.

¶16 We agree with Braketown, and we conclude that Kuehn's Labor Standards Complaint is not a Wage and Hour Wrongful Act and, therefore, it cannot be combined with the Retaliation Complaint or the FLSA counterclaim as a single claim as Interrelated Wrongful Acts. Therefore, Braketown was not required to provide notice of its claim at the time that Braketown received Kuehn's Labor Standards Complaint. Further, Braketown's notices to Markel on February 7, 2020, of Kuehn's Retaliation Complaint and on December 22, 2020, of Kuehn's FLSA counterclaim were timely. Furthermore, as a result of our conclusion today, we need only address Braketown's first argument. *See State v. Blalock*, 150 Wis. 2d 688, 703, 442 N.W.2d 514 (Ct. App. 1989) ("[C]ases should be decided on the narrowest possible ground[.]").

¶17 Returning to the policy language, the policy defines a Wage and Hour Wrongful Act as "an actual or alleged violation of the Fair Labor Standards Act (except the Equal Pay Act) or any other law concerning wage and hour practices."[4] However, nothing in the four corners of Kuehn's Labor Standards

---

[4] Markel emphasizes that the definition of Wage and Hour Wrongful Act is not limited to a violation of the FLSA. We agree and, as explained further below, Kuehn's Labor Standards Complaint fails to raise a violation of more than just the FLSA. Indeed, in making its argument, Markel fails to appreciate that Braketown raises an argument regarding each applicable law "concerning wage and hour practices." Accordingly, we address each of the potentially applicable laws raised by Braketown.

Complaint amounts to an actual or alleged violation of the FLSA or any other law concerning wage and hour practices. Indeed, as the parties stipulated, Braketown promptly paid Kuehn her two hours of vacation on her following paycheck and Braketown deposited the deduction from Kuehn's wages into her HSA within six business days. To be sure, Braketown's prompt response caused the Labor Standards Complaint to be finished before it even started. Kuehn's issues were resolved prior to the date that she even filed her complaint, and her complaint was immediately closed and it was not pursued. Braketown also incurred no claim expenses in response to Kuehn's Labor Standards Complaint because it was processed internally.

¶18 Further, parsing out the potentially applicable "law[s] concerning wage and hour practices" noted by Braketown, we first observe that the Labor Standards Complaint fails to allege a violation of the FLSA because the FLSA concerns minimum wages, maximum pay, and overtime wages. *See **Kasten v. Saint-Gobain Performance Plastics Corp.**,* 563 U.S. 1, 4 (2011). Neither Kuehn's pay for two hours of vacation time, nor the deposit to her HSA concern either payment of minimum wages, maximum pay, or overtime wages. Turning to the potentially applicable Wisconsin law, WIS. STAT. § 109.03 requires payment within thirty-one days to employees. By responding immediately, Braketown complied with this requirement under Wisconsin law. The last potentially applicable law, the Employee Retirement Income Security Act (ERISA), 29 U.S.C. §§ 1001-1193c, requires that an employer with fewer than 100 employees deposit deductions within seven business days. *See* 29 C.F.R. § 2510.3-102(a)(2)(i). Braketown again complied with this requirement. There is, therefore, no actual or alleged Wage and Hour Wrongful Act within the meaning of the policy.

9

¶19 Markel argues that Braketown's approach requires an improper analysis of the merits of Kuehn's Labor Standards Complaint and states that Markel would not be permitted to deny coverage for a claim based on its merit, or lack thereof, of the Labor Standards Complaint. However, Markel nonetheless fails to develop any argument in response to Braketown's arguments to explain how Kuehn's Labor Standards Complaint allege a violation of the FLSA or any other law concerning wage and hour practices. Accordingly, we are unpersuaded by Markel's attempt to explain how Kuehn's Labor Standards Complaint amounts to a Wage and Hour Wrongful Act within the meaning of the policy.

¶20 As a result, we conclude that the Labor Standards Complaint is not an Interrelated Wrongful Act with Kuehn's Retaliation Complaint and Kuehn's FLSA counterclaim such that they can be combined as a single claim under the policy and, therefore, Braketown's notice was timely. Braketown received notice of Kuehn's Retaliation Complaint on July 24, 2019, and the ERD's probable cause determination of Kuehn's Retaliation Complaint on January 21, 2020, and it promptly reported Kuehn's Retaliation Complaint on February 7, 2020. Braketown's notice of Kuehn's Retaliation Complaint and notice to Markel all properly occurred within the policy effective May 24, 2019 to May 24, 2020, and therefore, it was timely. Braketown also received notice of and reported Kuehn's FLSA counterclaim in December 2020 during the policy that was effective May 24, 2020 to May 24, 2021. Both Braketown's notice of Kuehn's claims and Braketown's reporting of those claims to Markel were made within the proper notice period for the effective dates of the insurance policy and thus were timely.

¶21 Accordingly, we reverse the circuit court's order, and we remand with instructions to grant summary judgment in favor of Braketown and for further proceedings consistent with this opinion.

*By the Court.*—Order reversed and cause remanded for further proceedings.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.